SYLLABUS

(This syllabus is not part of the opinion of the Court.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Supreme Court.  Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Annemarie Morgan v. Sanford Brown Institute** (075074) (A-31-14)

**Argued December 2, 2015 – Decided June 14, 2016**

**ALBIN, J., writing for a majority of the Court.**

In this appeal involving an arbitration provision contained in the enrollment agreement for Sanford Brown Institute, the Court considers whether the court or an arbitrator should determine the arbitrability of claims for consumer fraud and other charges asserted in plaintiffs' complaint.

Plaintiffs filed a lawsuit asserting that misrepresentations and deceptive business practices by defendant Sanford Brown Institute and certain administrators caused them to enroll in Sanford Brown's ultrasound technician program.  Plaintiffs claimed that they sustained financial loss and other injury as a result of defendants' wrongful conduct.  Defendants filed a motion to compel arbitration of plaintiffs' claims, but did not make it clear that they wanted the arbitrator, rather than the court, to decide whether the parties agreed to arbitration.  The trial court declined to enforce the arbitration provision, finding it unenforceable because it did not inform plaintiffs that they were waiving statutory remedies, and the provision conflicted with the remedies available under the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -195.

The Appellate Division reversed, dismissed the complaint, and ordered arbitration.  The panel held that the trial court improperly failed to enforce the arbitration agreement's delegation clause.  The panel found that the parties had clearly and unmistakably agreed that an arbitrator would determine whether the parties agreed to arbitration, and that plaintiffs failed to specifically attack the delegation clause.  The Appellate Division remanded the matter for arbitration to enable the arbitrator to decide whether the claims asserted were subject to arbitration under the agreement.  However, the panel also made findings on the enforceability of certain provisions in the arbitration clause.  The panel concluded that the arbitration agreement is sufficiently clear and unambiguous to provide plaintiffs with reasonable notice of the requirement to arbitrate all claims related to their enrollment agreements, including the CFA claim.

The Court granted certification limited to the issue of "whether plaintiffs can be compelled to arbitrate all claims related to their enrollment agreements, including their Consumer Fraud Act claims, under the terms of this arbitration agreement."  220 N.J. 265 (2015).

**HELD:**  The arbitration provision and purported delegation clause in the enrollment agreement fail to comply with the requirements of First Options of Chi., Inc. v. Kaplan, 514 U.S. 938 (1995), and Atalese v. U.S. Legal Servs. Grp., 219 N.J. 430 (2014), cert. denied, 135 S. Ct. 2804 (2015).  They also fail to satisfy the elements necessary for the formation of a contract.  Consequently, whether the parties agreed to arbitrate their dispute is an issue for determination by the court.  The Court holds that the arbitration and delegation provisions of the agreement are unenforceable.

1. The standard of review by this Court of the validity of an arbitration agreement is de novo.  The Court owes no deference to the interpretative analysis of either the trial court or Appellate Division except as the Court may be persuaded by the reasoning of these courts.  The Court construes the arbitration provision anew and without deference to the determinations of the trial court or the Appellate Division.  (p. 14)

2. The parties to an arbitration agreement can agree to delegate to an arbitrator the issue of whether they agreed to arbitrate a particular dispute.  State law governs whether the parties formed a contract to arbitrate their disputes, and agreed to delegate the issue of arbitrability to an arbitrator.  The law presumes that a court, not an arbitrator, decides any issue concerning arbitrability.  To overcome the presumption of judicial resolution, there must be clear and unmistakable evidence that the parties have agreed that the arbitrator will decide the question of arbitrability.

Silence or ambiguity in an agreement does not overcome the presumption that a court will decide arbitrability. (pp. 15-18)

3. The arbitration provision in this case does not contain a clearly identifiable delegation clause. The provision fails to explain that an arbitrator will decide whether the parties agreed to arbitrate legal claims, including statutory violations, and it does not explain that arbitration is a substitute for bringing a claim before a court or jury. Additionally, defendants did not assert the delegation clause before the motion court, or argue that the court lacked jurisdiction to decide arbitrability. The motion record reveals that both parties expected the court to decide the issue of arbitrability. (pp. 19-21)

4. The arbitration agreement and purported delegation clause are subject to state-law contract principles. The arbitration provision fails to comply with the dictates of Atalese because it fails to explain that arbitration is a substitute for the right to seek relief in our judicial system. The meaning of arbitration is not self-evident, and the arbitration provision is otherwise difficult to read. The agreement is not written in plain language that would clearly inform the average consumer that he or she is giving up the right to seek relief in a judicial forum. This minimal knowledge of the meaning and effect of arbitration, which was necessary to establish a meeting of the minds based on a common understanding of the contract terms and enable the student plaintiffs to give informed assent, is absent here. This flaw also extends to the purported delegation clause. The arbitration provision and the purported delegation clause are unenforceable. (pp. 22-28)

5. Defendants did not make clear to the motion court that they were invoking a delegation clause and that the decision whether the parties agreed to arbitration resided with the arbitrator, not the court. The obligation of a party to mount a specific challenge to the validity of a delegation clause, as required by Rent-A-Center, 561 U.S. 63 (2010), presupposes a clearly identifiable delegation clause. Because the arbitration provision did not clearly and unmistakably delegate arbitrability to the arbitrator, and did not plainly define arbitration as a substitute for a judicial forum, plaintiffs cannot be faulted for failing to object to an inadequately defined delegation clause. (pp. 8-10, 18, 28)

The judgment of the Appellate Division is **REVERSED** and the matter is **REMANDED** to the trial court for proceedings consistent with this opinion.

**JUSTICE PATTERSON, DISSENTING,** would affirm the Appellate Division's determination that the United States Supreme Court's decision in Rent-A-Center compels the conclusion that the parties' dispute regarding arbitrability should be decided by an arbitrator applying principles of New Jersey contract law. Justice Patterson states that because plaintiffs, in the trial court, did not challenge the contract language that defendants invoked on the question of arbitrability, they therefore waived their challenge to the delegation provision under Rent-A-Center. Justice Patterson concludes that all issues in the matter, including plaintiffs' claims that the arbitration provision is unconscionable, should be determined in arbitration.

**CHIEF JUSTICE RABNER, JUSTICES LaVECCHIA and SOLOMON, and JUDGE CUFF (temporarily assigned), join in JUSTICE ALBIN's opinion. JUSTICE PATTERSON filed a separate, dissenting opinion. JUSTICE FERNANDEZ-VINA did not participate.**

2

ANNEMARIE MORGAN and TIFFANY
DEVER,

     Plaintiffs-Appellants,

          v.

SANFORD BROWN INSTITUTE,
CAREER EDUCATION CORPORATION,
INC.,

     Defendants-Respondents,

          and

MATTHEW DIACONT, GREG LNU,
SALVATORE COSTA, JANET YOUNG,
and KRISTA HOLDEN,

     Defendants.

Argued December 2, 2015 – Decided June 14, 2016

On certification to the Superior Court,
Appellate Division.

Robert J. O'Shea, Jr., argued the cause for
appellants.

Louis Smith argued the cause for respondents
(Greenberg Traurig, attorneys; Mr. Smith and
Brian T. Feeney, a member of the
Commonwealth of Pennsylvania and Connecticut
bars, on the briefs).

James A. Barry argued the cause for amicus
curiae New Jersey Association for Justice
(Locks Law Firm, attorneys; Mr. Barry,
Michael A. Galpern, Andrew P. Bell, and
Charles Riley, on the brief).

Mark Miller argued the cause for amicus curiae Pacific Legal Foundation.

Gavin J. Rooney, Joseph A. Fischetti and Amy C. Gromek submitted a brief on behalf of amici curiae New Jersey Civil Justice Institute and Chamber of Commerce of the United States of America.

JUSTICE ALBIN delivered the opinion of the Court.

Last term, we held that an arbitration provision in a consumer contract that fails to explain in some minimal way that arbitration is a substitute for a consumer's right to pursue relief in a court of law is unenforceable. Atalese v. U.S. Legal Servs. Grp., 219 N.J. 430, 436 (2014), cert. denied, __ U.S. __, 135 S. Ct. 2804, 192 L. Ed. 2d 847 (2015). Under the Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1-16, state law governs whether parties to a consumer contract have agreed to arbitrate their disputes. The formation of an agreement to arbitrate under state law requires that a consumer have some understanding that, by accepting arbitration, she is surrendering her common-law and constitutional right of access to the courthouse. Because the term "arbitration" is not self-defining, an arbitration agreement must inform a consumer in some manner that she is waiving her right to seek relief in the judicial system.

Plaintiffs filed a lawsuit claiming that the

2

misrepresentations and deceptive business practices of defendant Sanford Brown Institute and certain defendant administrators led them both to enroll in Sanford Brown's ultrasound technician program. The enrollment agreement signed by plaintiffs contained an arbitration provision that nowhere mentions that the two students were surrendering their right to resolve their legal claims in a judicial forum. The issue in this case is whether a judge or an arbitrator will decide whether the parties agreed to arbitrate the consumer-fraud and other claims raised in plaintiffs' complaint.

Defendants filed a motion to compel arbitration, but did not make clear that they wanted the arbitrator, rather than the court, to decide whether the parties agreed to arbitration. The trial court declined to submit the lawsuit to arbitration because the arbitration provision did not inform plaintiffs that they were waiving statutory remedies and because the provision conflicted with the remedies available under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -195.

The Appellate Division concluded that the trial court failed to enforce the arbitration agreement's clause delegating to the arbitrator the issue of whether the parties agreed to arbitration and remanded for arbitration. The appellate panel found that "the parties 'clearly and unmistakably' agreed an arbitrator would determine issues of arbitrability" and that

3

plaintiffs failed to "specifically attack[] the delegation clause."[1] The panel therefore determined that "arbitrability [was] for the arbitrator to decide."

We reverse. In doing so, we recognize that both the trial court and Appellate Division did not have the benefit of Atalese at the time they rendered their decisions.

An agreement to delegate arbitrability to an arbitrator, like an arbitration agreement itself, must satisfy the elements necessary for the formation of a contract under state law. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985, 994 (1995). The putative delegation clause does not explain that arbitration is a substitute for the right to seek relief in court -- information necessary for the formation of a valid contract.

As important, the arbitration provision in Sanford Brown's enrollment agreement does not contain a clearly identifiable delegation clause.[2] Indeed, defendants never asserted with any

---

[1] Arbitrability is whether the parties have agreed to submit to an arbitrator or a court the authority to decide whether a dispute is subject to arbitration. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 942-43, 115 S. Ct. 1920, 1923-24, 131 L. Ed. 2d 985, 992 (1995).

[2] A delegation clause is a clause in an arbitration agreement that assigns to the arbitrator the decision whether a dispute is subject to arbitration. Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68-69, 130 S. Ct. 2772, 2777, 177 L. Ed. 2d 403, 411 (2010).

4

clarity before the motion court that they were relying on a delegation clause. Unless the parties have <u>clearly</u> delegated to an arbitrator the decision whether the parties agreed to arbitration, the issue is for a court to resolve. <u>Ibid.</u> Last, <u>Rent-A-Center, West, Inc. v. Jackson</u>, 561 <u>U.S.</u> 63, 130 <u>S. Ct.</u> 2772, 177 <u>L. Ed.</u> 2d 403 (2010), does not suggest that a party is obliged to specifically challenge a delegation provision that cannot be clearly identified in an arbitration agreement.

The arbitration provision here does not conform to the dictates of <u>First Options</u> or <u>Atalese</u>. Accordingly, the arbitration provision and its putative delegation clause are not enforceable. We remand to the trial court for proceedings consistent with this opinion.

<div align="center">I.</div>

<div align="center">A.</div>

In May 2013, plaintiffs Annemarie Morgan and Tiffany Dever filed a civil action in Superior Court against defendants Sanford Brown Institute and its parent company, Career Education Corporation. Plaintiffs also named as defendants Sanford Brown's chief executive officer, admission and financial aid officers, and clinical director. The complaint alleged that defendants, either collectively or individually, committed (1) a violation of the Consumer Fraud Act, (2) breach of contract, (3) breach of warranties, and (4) negligent misrepresentation.

<div align="center">5</div>

Sanford Brown is a private, for-profit educational institution with a campus in Trevose, Pennsylvania, that offers medical-related training programs. In 2009, plaintiffs signed enrollment agreements for admission into Sanford Brown's 2010 ultrasound technician program.

In the complaint, plaintiffs claimed that defendants misrepresented the value of the school's ultrasound technician program and the quality of its instructors, instructed students on outdated equipment and with inadequate teaching materials, provided insufficient career-service counseling, and conveyed inaccurate information about Sanford Brown's accreditation status. The complaint further alleged that Sanford Brown employed high-pressure and deceptive business tactics that resulted in plaintiffs financing their education with high-interest loans, passing up the study of ultrasound at a reputable college, and losing career advancement opportunities.

Without answering the complaint, defendants filed a motion in Superior Court to compel arbitration and to dismiss plaintiffs' claims pursuant to Rule 4:6-2.[3] Defendants appended to the motion the four-page enrollment agreements signed by plaintiffs before their admission into the ultrasound program.

_____

[3] Before the motion court, Sanford Brown claimed that the individual defendants had not been served with the complaint. The individual defendants are not a party to this appeal.

6

The Sanford Brown enrollment agreement included payment terms for tuition and fees, disclaimers, and an arbitration provision.

Plaintiffs' signatures appear on the second page of their agreements, as do the signatures of Sanford Brown's "Admissions Representative" and "Authorized School Official." Immediately above the signature line is the following text in italicized ten-point Times New Roman font: *"THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES."*

The arbitration provision at issue appears on page four in thirty-five unbroken lines of nine-point Times New Roman font. The relevant part of the arbitration provision is reproduced here in its original font and font size:[4]

Agreement to Arbitrate -- Any disputes, claims, or controversies between the parties to this Enrollment Agreement arising out of or relating to (i) this Enrollment Agreement; (ii) the Student's recruitment, enrollment, attendance, or education; (iii) financial aid or career service assistance by SBI; (iv) any claim, no matter how described, pleaded or styled, relating, in any manner, to any act or omission regarding the Student's relationship with SBI, its employees, or with externship sites or their employees; or (v) any objection to arbitrability or the existence, scope, validity, construction, or enforceability of this Arbitration Agreement shall be resolved pursuant to this paragraph (the "Arbitration Agreement"). Choice of Arbitration Provider and Arbitration Rules -- Unless the parties agree to an alternative, the arbitration shall be administered by the American Arbitration Association ("AAA") or the National Arbitration Forum ("NAF"). The arbitration shall be before a single arbitrator. . . . Choice of Law -- The arbitrator shall apply federal law to the fullest extent possible, and the substantive and procedural provisions of the Federal Arbitration Act (9 U.S.C. §§ 1-16) shall govern this Arbitration Agreement and any and all issues relating to the enforcement of the Arbitration Agreement and the arbitrability of claims between parties. Costs, fees, and expenses of arbitration -- Each party shall bear the expense of its own counsel, experts, witnesses, and preparation and presentation of proofs. All fees and expenses of the arbitrator and administrative fees and expenses of the arbitration shall be borne equally by the parties unless otherwise provided by the rules of the AAA or the NAF governing the proceeding, or by specific ruling by the arbitrator, or by agreement of the parties. Relief and Remedies -- The arbitrator shall have the authority to award monetary damages and may grant any non-monetary remedy or relief available by applicable law and rules of the arbitration forum governing the proceeding and within

---

[4] For ease of reading, the arbitration provision is reproduced in full in Courier New, twelve-point font in the addendum. In the original enrollment agreement, each line of text is approximately six inches long, whereas the excerpted lines above are approximately four inches long.

the scope of this Enrollment Agreement. The arbitrator will have no authority to alter any grade given to the Student or to require SBI to change any of its policies or procedures. The arbitrator will have no authority to award consequential damages, indirect damages, treble damages or punitive damages, or any monetary damages not measured by the prevailing party's economic damages. The arbitrator will have no authority to award attorney's fees except as expressly provided by this Enrollment Agreement or authorized by law or the rules of the arbitration forum. . . . Arbitrator's Award -- At the request of either party, the arbitrator shall render a written award briefly setting forth his or her essential findings and conclusions. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction. Severability and right to waive -- If any part or parts of this Arbitration Agreement are found to be invalid or unenforceable by a decision of a tribunal of competent jurisdiction, then such specific part or parts shall be of no force and effect and shall be severed, but the remainder of this Arbitration Agreement shall continue in full force and effect. Any or all of the limitations set forth in this Arbitration Agreement may be specifically waived by the party against whom the claim is asserted. Such waiver shall not waive or effect any other portion of this Arbitration Agreement. Survival of provisions of this agreement -- This Arbitration Agreement will survive the termination of the Student's relationship with SBI.

B.

In support of their motion to compel arbitration, defendants filed a supporting brief and a reply brief and engaged in an oral colloquy with the court. Although defendants urged the court to dismiss the complaint and send plaintiffs' dispute to arbitration, defendants did not assert with any clarity that the arbitrator, not the judge, should decide whether the parties agreed to arbitration. In other words, defendants did not truly contest the court's power to decide arbitrability. They did not argue that the arbitration provision contained a "delegation clause," as they did before the Appellate Division and this Court. Nor did they cite to Rent-A-Center for the proposition that plaintiffs failed to challenge the arbitration provision's putative delegation clause, as they did before the Appellate Division and this Court.

8

Indeed, defendants' proposed order did not ask the motion court to submit to an arbitrator whether the parties agreed to arbitration. The proposed order merely sought to compel plaintiffs "to submit the present dispute to arbitration."

Plaintiffs generally argued that the arbitration provision was unconscionable and therefore void because its terms were at odds with the Consumer Fraud Act's allowance of treble damages and attorney's fees.

The motion court denied defendants' motion to compel arbitration. The court explained that the arbitration provision did not contain language stating that plaintiffs agreed to waive their "federal or statutory remedies." The court also concluded that the arbitration provision was at odds with the Consumer Fraud Act because the provision disallowed attorney's fees to plaintiffs if they were the prevailing parties and because it limited the full range of damages permitted under the Act.

C.

The Appellate Division reversed the trial court, dismissing plaintiffs' complaint and directing that plaintiffs' claims be sent to arbitration in accordance with the enrollment agreements. The panel accepted defendants' contention that the trial court ignored the arbitration provision's "delegation clause." It determined that plaintiffs had not "specifically attacked the delegation clause," and, in the absence of such a

9

challenge, the delegation clause had to be treated as valid, citing Rent-A-Center, supra, 561 U.S. at 72, 130 S. Ct. at 2779, 177 L. Ed. 2d at 413.

The panel further held that "the parties 'clearly and unmistakably' agreed an arbitrator would determine issues of arbitrability" based on language in the enrollment agreement, which reads: "[A]ny objection to arbitrability or the existence, scope, validity, construction, or enforceability of this Arbitration Agreement shall be resolved pursuant to this paragraph." Accordingly, the panel concluded that the trial court erred by not submitting the issue of arbitrability to arbitration.

Although the panel decided that the arbitrator, not a court, should rule on arbitrability, the panel nevertheless proceeded to make its own legal findings on the enforceability of certain terms in the arbitration clause. The panel struck down as unconscionable that part of the arbitration clause prohibiting the arbitrator from awarding treble damages, as permitted by the Consumer Fraud Act. It also found that the arbitration clause's severability provision "addresses the motion judge's understandable concern of possible conflict with the [Consumer Fraud Act]." The panel concluded by stating "that the arbitration agreement is sufficiently clear, unambiguously worded, and drawn in suitably broad language to provide

10

plaintiffs with reasonable notice of the requirement to arbitrate all claims related to their enrollment agreements, including their [Consumer Fraud Act] claims."

We granted plaintiffs' petition for certification "limited to the issue of whether plaintiffs can be compelled to arbitrate all claims related to their enrollment agreements, including their Consumer Fraud Act claims, under the terms of this arbitration agreement." Morgan v. Sanford Brown Inst., 220 N.J. 265, 265-66 (2015). We also granted the motions of the New Jersey Association for Justice, the Pacific Legal Foundation, and the New Jersey Civil Justice Institute and Chamber of Commerce of the United States of America to participate as amici curiae.

## II.

### A.

Plaintiffs contend that they did not know that the arbitration provision denied them their right of access to a judicial forum and to a jury trial. They insist that the arbitration provision was shrouded in ambiguity and did not provide the information necessary for an effective knowing and voluntary waiver of rights. In particular, plaintiffs claim that the arbitration provision is unenforceable under Atalese because the enrollment agreement failed to explain that arbitration was a substitute for their right to seek relief in

11

court. In making those arguments, plaintiffs do not distinguish between the validity of the arbitration agreement as a whole and the putative delegation clause. Plaintiffs reason that the withheld waiver-of-rights information foreclosed a meeting of minds, which is essential for the formation of a valid contract. Last, plaintiffs submit that the arbitration provision is void because its terms are inimical to remedies provided under the Consumer Fraud Act, which include treble damages and attorney's fees to a prevailing claimant.

Amicus curiae the New Jersey Association for Justice argues that the enrollment agreement's arbitration provision does not meet the dictates of the Plain Language Act, N.J.S.A. 56:12-2. According to the Association, the arbitration provision not only fails to inform "prospective students that they are waiving any rights," as mandated by Atalese, supra, 219 N.J. at 436, but also is confusing and misleading about the breadth of arbitration. The Association states that defendants did not establish by clear and unmistakable evidence that the parties intended to delegate arbitrability, as required by Rent-A-Center, supra, 561 U.S. at 72, 130 S. Ct. at 2779, 177 L. Ed. 2d at 413, and First Options, supra, 514 U.S. at 944, 115 S. Ct. at 1924, 131 L. Ed. 2d at 994. The Association submits that the enrollment agreement "fails to evidence a mutual assent on the part of the parties to arbitrate and is therefore

12

unenforceable."

<center>B.</center>

Defendants claim that the enrollment agreement's arbitration provision includes a delegation clause, which authorizes the arbitrator to decide whether the parties agreed to arbitration. Defendants assert that plaintiffs' failure to challenge the delegation clause specifically requires that arbitrability must be decided by the arbitrator, citing Rent-A-Center, supra, 561 U.S. at 72, 130 S. Ct. at 2779, 177 L. Ed. 2d at 413. The arbitrator's authority, according to defendants, extends to deciding whether the arbitration provision is enforceable under Atalese. Defendants also argue that Atalese is distinguishable from the present case because the Atalese arbitration provision did not contain a delegation clause. Last, defendants submit that the arbitration clause is clear and unambiguous and that a reasonable consumer would understand that she was waiving her right to sue Sanford Brown in court over any dispute arising from the enrollment agreement.

Amicus curiae Pacific Legal Foundation argues that the delegation clause "[h]ere, as in Rent-A-Center, provides that the parties agree to arbitrate threshold issues concerning the arbitrability of 'any claims,' including but not limited to statutory claims." Accordingly, the Foundation urges that we uphold the validity of the delegation clause, which plaintiffs

<center>13</center>

failed to attack, and leave any challenges about arbitrability to the arbitrator.

Amici curiae New Jersey Civil Justice Institute and Chamber of Commerce of the United States jointly contend that New Jersey case law, by describing an arbitration agreement as a waiver of rights and then by requiring that the waiver be "clear and unambiguous," disfavors arbitration and therefore violates the Federal Arbitration Act and applicable United States Supreme Court precedents. They urge the Court to align New Jersey law with federal precedent and "enforce [arbitration] agreements under general principles of contract (i.e., offer and acceptance) rather than under the restrictive standard applicable to waivers of substantive rights."

### III.

Our standard of review of the validity of an arbitration agreement, like any contract, is de novo. Atalese, supra, 219 N.J. at 446 (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)). We owe no deference to the interpretative analysis of either the trial court or Appellate Division, except as we may be persuaded by the reasoning of those courts. See id. at 445-46 (citing Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011)). We therefore construe the arbitration provision with fresh eyes. Kieffer, supra, 205 N.J. at 223.

### IV.

## A.

The key issue in this case is who decides whether the parties agreed to arbitrate disputes arising from the enrollment agreement:  a court or an arbitrator.

Parties to an arbitration agreement can agree to delegate to an arbitrator the issue of whether they agreed to arbitrate a particular dispute.  Rent-A-Ctr., supra, 561 U.S. at 68-69, 130 S. Ct. at 2777, 177 L. Ed. 2d at 411.  Thus, a delegation clause in an arbitration agreement can provide that an arbitrator, rather than a judge, will decide such "threshold issues" as whether the parties agreed to arbitrate a legal claim brought by a plaintiff.  See id. at 68, 130 S. Ct. at 2777, 177 L. Ed. 2d at 411.

State law governs not only whether the parties formed a contract to arbitrate their disputes, but also whether the parties entered an agreement to delegate the issue of arbitrability to an arbitrator.  First Options, supra, 514 U.S. at 944, 115 S. Ct. at 1924, 131 L. Ed. 2d at 993.  The Federal Arbitration Act simply requires that arbitration agreements be placed "on an equal footing with other contracts" and enforced according to their terms.  Rent-A-Ctr., supra, 561 U.S. at 67, 130 S. Ct. at 2776, 177 L. Ed. 2d at 410 (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443, 126 S. Ct. 1204, 1207, 163 L. Ed. 2d 1038, 1042 (2006); Volt Info. Scis. v. Bd.

15

of Trs., 489 U.S. 468, 478, 109 S. Ct. 1248, 1255, 103 L. Ed. 2d 488, 499-500 (1989)). Under the FAA, an arbitration agreement, like any contract, may be held invalid "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2;[5] see also Rent-A-Ctr., supra, 561 U.S. at 68, 130 S. Ct. at 2776, 177 L. Ed. 2d at 410 (stating that arbitration agreements, like other contracts, "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability'" (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S. Ct. 1652, 1656, 134 L. Ed. 2d 902, 909 (1996))). The purpose of the FAA is "to make arbitration agreements as enforceable as other contracts, but not more so." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n.12, 87 S. Ct. 1801, 1806 n.12, 18 L. Ed. 2d 1270, 1277 n.12 (1967).

Although the FAA expresses a national policy favoring arbitration, the law presumes that a court, not an arbitrator, decides any issue concerning arbitrability. First Options, supra, 514 U.S. at 944, 115 S. Ct. at 1924, 131 L. Ed. 2d at

---

[5] Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2.

994. In First Options, the United States Supreme Court stated that to overcome the judicial-resolution presumption, there must be "clea[r] and unmistakabl[e]" evidence "that the parties agreed to arbitrate arbitrability." Ibid. (alterations in original) (quoting AT&T Techs., Inc. v. Commuc'ns Workers, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648, 656 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.")). Silence or ambiguity in an agreement does not overcome the presumption that a court decides arbitrability. Ibid.

The issue in First Options was whether a stock-trading firm had agreed with clients to arbitrate the issue of arbitrability. Id. at 940-41, 115 S. Ct. at 1922-23, 131 L. Ed. 2d at 991-92. The Supreme Court determined that, based on the record, the firm could not "show that the [clients] clearly agreed to have the arbitrators decide (i.e., to arbitrate) the question of arbitrability." Id. at 946, 115 S. Ct. at 1925, 131 L. Ed. 2d at 994. Because the clients "did not clearly agree to submit the question of arbitrability to arbitration," the arbitrability of the "dispute was subject to independent review by the courts." Id. at 947, 115 S. Ct. at 1925-26, 131 L. Ed. 2d at 995.

Rent-A-Center did not alter the framework of First Options.

17

Rent-A-Center, supra, involved an employment contract, which contained an arbitration provision with a clear and unmistakable delegation clause.  561 U.S. at 65-66, 130 S. Ct. at 2775, 177 L. Ed. 2d at 408-09.  The Supreme Court reaffirmed the central holding of First Options that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so."  Id. at 69 n.1, 130 S. Ct. at 2777 n.1, 177 L. Ed. 2d at 411 n.1 (alterations in original) (quoting First Options, supra, 514 U.S. at 944, 115 S. Ct. at 1924, 131 L. Ed. 2d at 993).  The clarity of the delegation clause in Rent-A-Center was not in dispute.

Rent-A-Center merely stated that a party, in opposition to a motion to compel arbitration before a trial court, must mount a specific challenge to the validity of a delegation clause. Id. at 72, 130 S. Ct. at 2779, 177 L. Ed. 2d at 413.  But Rent-A-Center presupposed a clearly identifiable delegation clause that would be apparent to the parties.  The employment contract in Rent-A-Center stated that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement." Ibid. (alteration in original).

Given the clear and unmistakable language evidencing an

18

agreement to delegate arbitrability in Rent-A-Center, the Supreme Court held that unless the employee "challenged the delegation provision specifically," the provision is valid and enforceable under the FAA, "leaving any challenge to the validity of the [a]greement as a whole for the arbitrator." Id. at 72, 130 S. Ct. at 2779, 177 L. Ed. 2d at 413. The Court pointedly noted that "[t]he issue of the agreement's 'validity'" was in dispute, not "whether any agreement between the parties 'was ever concluded.'" Id. at 70 n.2, 130 S. Ct. at 2778 n.2, 177 L. Ed. 2d at 412 n.2 (quoting Buckeye Check Cashing, supra, 546 U.S. at 444 n.1, 126 S. Ct. at 1208 n.1, 163 L. Ed. 2d at 1043 n.1). The issue in this case is whether the parties formed a contract -- that is, whether the parties concluded an agreement. In contrast, the primary issue in Rent-A-Center dealt with the validity of an employment contract that the plaintiff claimed was unconscionable.

B.

Unlike in Rent-A-Center, the arbitration provision in this case does not have a clearly identifiable delegation clause. The "Agreement to Arbitrate" in Sanford Brown's enrollment agreement reads, in part: "Any disputes, claims, or controversies . . . arising out of or relating to (i) this Enrollment Agreement; (ii) the Student's recruitment, enrollment, attendance, or education; (iii) financial aid or

19

career service assistance by SBI; (iv) any claim . . . or (v) any objection to arbitrability . . . shall be resolved pursuant to this paragraph." (Emphasis added). The paragraph does not explain that an arbitrator will decide whether the parties agreed to arbitrate legal claims, including statutory violations; nor does it explain that arbitration is a substitute for bringing a claim before a court or jury. The purported delegation clause bears no resemblance to the one in Rent-A-Center.

Significantly, defendants did not raise the issue of a delegation clause or even once cite Rent-A-Center before the motion court. Defendants did not argue to the motion court that it lacked jurisdiction to decide whether the parties agreed to arbitration because that role was for the arbitrator alone. Instead, defendants filed a brief with the motion court stating that it should "order Plaintiffs to submit their claims to arbitration." In support of the argument that the court should decide arbitrability, defendants stated that "a motion to compel arbitration under the FAA merely requires the court to determine whether there is a valid and enforceable arbitration agreement between the parties, and whether the claims at issue fall within the substantive scope of that agreement," quoting Medtronic AVE, Inc. v. Advanced Cardiovascular Systems, Inc., 247 F.3d 44, 54-55 (3d Cir. 2001) (emphasis added). Defendants make much of the

20

fact that plaintiffs did not challenge the purported delegation clause, yet defendants never clearly asserted the existence of one. From a review of the motion-court record, it appears that both parties expected the motion court to decide whether the claims made by plaintiffs in their consumer-fraud action were subject to arbitration. The motion court did not have telepathic powers to grasp the delegation-clause issue that defendants raised for the first time so definitively before the Appellate Division and this Court. The motion court cannot be expected to address an issue that was not plainly raised before it.[6]

---

[6] The portion of defendants' oral colloquy before the motion court quoted by the dissent is not inconsistent with the parts of the brief cited above. Defendants stated:

> And indeed when you look at the scope of this agreement it covers any objection to arbitrability, or the existence, scope, validity, construction or enforceability of this arbitration agreement shall be resolved pursuant to this paragraph, so very broadly channels disputes like those that have been raised by the plaintiffs in this case for the arbitrator to decide.

That language fails to make clear that defendants wanted an arbitrator -- not the motion court -- to decide whether the parties had agreed to arbitrate the claims raised in plaintiffs' lawsuit. Defendants did not argue that a delegation clause, by whatever name, stripped the court of jurisdiction to decide the issue. Defendants merely stated that "disputes like those that have been raised by the plaintiffs" were "for the arbitrator to decide." That suggests defendants were looking for a ruling from the court that the lawsuit was subject to arbitration. In

C.

The arbitration provision in the Sanford Brown enrollment agreement suffers from the same flaw found in the arbitration provision in <u>Atalese</u> -- it does not explain in some broad or general way that arbitration is a substitute for the right to seek relief in our court system.  That flaw -- non-compliance with the dictates of <u>Atalese</u> -- extends to the purported delegation clause, which "is simply an additional, antecedent agreement the party seeking arbitration" looks to enforce.  <u>See</u> <u>Rent-A-Ctr.</u>, <u>supra</u>, 561 <u>U.S.</u> at 70, 130 <u>S. Ct.</u> at 2777-78, 177 <u>L. Ed.</u> 2d at 411.

The arbitration agreement and purported delegation clause in the present case are subject to state-law contract principles.  <u>First Options</u>, <u>supra</u>, 514 <u>U.S.</u> at 944, 115 <u>S. Ct.</u> at 1924, 131 <u>L. Ed.</u> 2d at 993.  An enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms.  <u>Atalese</u>, <u>supra</u>, 219 <u>N.J.</u> at 442.  The meaning of arbitration is not self-evident to the average consumer, who will not know, "without some explanatory comment[,] that arbitration is a substitute for the right to

---

any event, defendants failed clearly to assert that they were relying on a delegation clause.

have one's claim adjudicated in a court of law."[7]  Ibid.

The right to a civil jury trial is guaranteed by the New Jersey Constitution, N.J. Const. art. I, ¶ 9, and conferred by the New Jersey Consumer Fraud Act, see Allstate N.J. Ins. Co. v. Lajara, 222 N.J. 129, 147, 151 (2015) (citing Zorba Contractors, Inc. v. Hous. Auth., 362 N.J. Super. 124, 138-39 (App. Div. 2003)).  Our state-law jurisprudence makes clear "that when a contract contains a waiver of rights -- whether in an arbitration or other clause -- the waiver 'must be clearly and unmistakably established.'"  Atalese, supra, 219 N.J. at 444 (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., 168 N.J. 124, 132 (2001)).  Under state contract law, no greater burden is placed on an arbitration agreement than other agreements waiving constitutional or statutory rights.

---

[7] One statistical study concluded "that consumers have no idea what they are agreeing to when they enter into contracts containing arbitration clauses" and that many consumers believe that access to "court will be available to them, if only as a last resort."  Jeff Sovern, Elayne E. Greenberg, Paul F. Kirgis, & Yuxiang Liu, "Whimsy Little Contracts" with Unexpected Consequences:  An Empirical Analysis of Consumer Understanding of Arbitration Agreements, 75 Md. L. Rev. 1, 63 (2015).  Another study by the Consumer Financial Protection Bureau similarly concluded that a majority of credit-card consumers whose agreements contained arbitration clauses did not understand that they could not file suit in court.  Consumer Fin. Prot. Bureau, Arbitration Study Report to Congress, Pursuant to Dodd-Frank Wall Street Reform and Consumer Protection Act § 1028(a), § 3 at 3 (2015), http://files.consumerfinance.gov/f/201503_cfpb_arbitration-study-report-to-congress-2015.pdf.

*Atalese*, *supra*, 219 *N.J.* at 443-44, 447 (collecting non-arbitration-clause cases requiring clear and unambiguous contractual language to achieve waiver of rights).

No magical language is required to accomplish a waiver of rights in an arbitration agreement. Our courts have upheld arbitration clauses that have explained in various simple ways "that arbitration is a waiver of the right to bring suit in a judicial forum." *Id.* at 444. *See Martindale v. Sandvik, Inc.*, 173 *N.J.* 76, 81-82 (2002) (upholding arbitration clause stating that "all disputes relating to [the party's] employment . . . shall be decided by an arbitrator" and that party "waiv[ed] [her] right to a jury trial"); *Curtis v. Cellco P'ship*, 413 *N.J. Super.* 26, 31, 33 (App. Div.), *certif. denied*, 203 *N.J.* 94 (2010) (upholding arbitration agreement, which stated that parties "agree to settle disputes . . . only by arbitration" and not by "suing in court" and explained that "rules in arbitration are different," "no judge or jury" is present, and "review is limited"); *Griffin v. Burlington Volkswagen, Inc.*, 411 *N.J. Super.* 515, 518, 520 (App. Div. 2010) (enforcing arbitration clause stating that parties, by agreeing to arbitration, waived "their rights to maintain other available resolution processes, such as a court action or administrative proceeding, to settle their disputes").

D.

24

The Sanford Brown enrollment agreement and arbitration provision do not explain, in broadly worded language or any other manner, that plaintiffs are waiving their right to seek relief in court for a breach of the enrollment agreement or for a statutory violation.  See Atalese, supra, 219 N.J. at 446. The Sanford Brown enrollment agreement, moreover, is not "written in plain language that would be clear and understandable to the average consumer that she is" giving up the right to pursue relief in a judicial forum.  Ibid.  New Jersey law requires that "a consumer contract . . . be written in a simple, clear, understandable and easily readable way." N.J.S.A. 56:12-2.[8]

---

[8] In judging whether a consumer contract meets this standard, courts must "take into consideration the guidelines set forth in [N.J.S.A. 56:12-10]."  N.J.S.A. 56:12-2.  N.J.S.A. 56:12-10, in part, provides:

> a.  To insure that a consumer contract shall be simple, clear, understandable and easily readable, the following are examples of guidelines that a court . . . may consider in determining whether a consumer contract as a whole complies with this act:
>> (1) Cross references that are confusing;
>> (2) Sentences that are of greater length than necessary;
>> (3) Sentences that contain double negatives and exceptions to exceptions;
>> (4) Sentences and sections that are in a confusing or illogical order;
>> (5) The use of words with obsolete meanings or words that differ in their legal meaning from their common ordinary

The body of the Sanford Brown enrollment agreement is in nine-point font, including the more than 750-word arbitration clause set forth in thirty-five unbroken lines, as reproduced earlier in this opinion.  The best that can be said about the arbitration provision is that it is as difficult to read as other parts of the enrollment agreement.

In conclusion, the arbitration provision and purported delegation clause do not meet the requirements of First Options and Atalese and do not satisfy the elements necessary for the formation of a contract, and therefore are unenforceable.

V.

We note that, here, the Appellate Division opinion was internally inconsistent.  If the panel correctly found that the

<div style="border-top: 1px solid"></div>

meaning;
(6) Frequent use of Old English and Middle English words and Latin and French phrases.
b.   The following are examples of guidelines that a court . . . may consider in determining whether the consumer contract as a whole complies with this act:
(1)  Sections shall be logically divided and captioned;
(2)  A table of contents or alphabetical index shall be used for all contracts with more than 3,000 words;
(3) Conditions and exceptions to the main promise of the agreement shall be given equal prominence with the main promise, and shall be in at least 10 point type.

26

enrollment agreement delegated the arbitrability of disputes to the arbitrator, then an arbitrator should have determined whether those disputes were to be resolved in an arbitral or judicial forum. By ruling on the validity of the arbitration provision's treble damages clause and finding that it conflicted with the Consumer Fraud Act -- however correct that may be -- the panel exercised a power that it declared resided in the arbitrator in the first instance. Nevertheless, for the reasons already expressed, we disagree with the Appellate Division's conclusion that the arbitration provision contained a clear and unmistakable delegation clause.

## VI.

We offer some advice that may avoid in the future the kind of litigation that has spurred this case. A party seeking to enforce a delegation clause in an arbitration agreement should make clear to the motion court that the decision whether the parties agreed to arbitration resides with the arbitrator, not the court.

The party opposing enforcement of the arbitration agreement must lodge a specific challenge to the delegation clause. The failure to do so will require that the issue of arbitrability be determined by the arbitrator.

## VII.

In summary, the arbitration provision and purported

27

delegation clause in Sanford Brown's enrollment agreement failed to explain in some sufficiently broad way or otherwise that arbitration was a substitute for having disputes and legal claims resolved before a judge or jury.  This minimal knowledge of the meaning of arbitration was necessary for the student plaintiffs to give informed assent to arbitration and to waive their rights to pursue relief in a judicial forum.  Without such assent, an arbitration agreement was not formed under New Jersey law.

The arbitration provision did not clearly and unmistakably delegate arbitrability to the arbitrator.  Plaintiffs cannot be faulted for not objecting to an inadequately limned delegation clause that, in addition, did not define arbitration as a substitute for a judicial forum.  We hold that the arbitration agreement is unenforceable.  We therefore reverse the judgment of the Appellate Division and remand to the trial court for proceedings consistent with this opinion.

ADDENDUM

The arbitration provision included in Sanford Brown's

enrollment agreement states in full:

> <u>Agreement to Arbitrate</u> -- Any disputes,
> claims, or controversies between the parties
> to this Enrollment Agreement arising out of or
> relating to (i) this Enrollment Agreement;
> (ii) the Student's recruitment, enrollment,
> attendance, or education; (iii) financial aid
> or career service assistance by SBI; (iv) any
> claim, no matter how described, pleaded or
> styled, relating, in any manner, to any act or
> omission regarding the Student's relationship
> with SBI, its employees, or with externship
> sites or their employees; or (v) any objection
> to arbitrability or the existence, scope,
> validity, construction, or enforceability of
> this Arbitration Agreement shall be resolved
> pursuant to this paragraph (the "Arbitration
> Agreement"). <u>Choice of Arbitration Provider
> and Arbitration Rules</u> -- Unless the parties
> agree to an alternative, the arbitration shall
> be administered by the American Arbitration
> Association ("AAA") or the National
> Arbitration Forum ("NAF"). The arbitration
> shall be before a single arbitrator. If
> brought before the AAA, the AAA's Commercial
> Arbitration Rules, and applicable
> supplementary rules and procedures of the AAA,
> in effect at the time the arbitration is
> brought, shall be applied. If brought before
> the NAF, the NAF's Code of Procedure in effect
> at the time the arbitration is brought shall
> be applied. Copies of the AAA's Rules or the
> NAF's Code may be obtained from SBI's Campus
> President. Information about the arbitration
> process also can be obtained from: AAA at
> www.adr.org or 1-800-778-7879; NAF at
> www.arbforum.com or 1-952-516-6400 or toll-
> free at 1-800-474-2371. <u>Location of
> arbitration</u> -- All in-person hearings and
> conferences in the arbitration shall take
> place in a locale near SBI unless the Student
> and SBI agree otherwise. <u>Language</u> -- The

language of the arbitration shall be in English. Any party desiring or requiring a different language shall bear the expense of an interpreter. <u>Choice of Law</u> -- The arbitrator shall apply federal law to the fullest extent possible, and the substantive and procedural provisions of the Federal Arbitration Act (9 U.S.C. §§ 1-16) shall govern this Arbitration Agreement and any and all issues relating to the enforcement of the Arbitration Agreement and the arbitrability of claims between parties. <u>Costs, fees, and expenses of arbitration</u> -- Each party shall bear the expense of its own counsel, experts, witnesses, and preparation and presentation of proofs. All fees and expenses of the arbitrator and administrative fees and expenses of the arbitration shall be borne equally by the parties unless otherwise provided by the rules of the AAA or the NAF governing the proceeding, or by specific ruling by the arbitrator, or by agreement of the parties. <u>Relief and Remedies</u> -- The arbitrator shall have the authority to award monetary damages and may grant any non-monetary remedy or relief available by applicable law and rules of the arbitration forum governing the proceeding and within the scope of this Enrollment Agreement. The arbitrator will have no authority to alter any grade given to the Student or to require SBI to change any of its policies or procedures. The arbitrator will have no authority to award consequential damages, indirect damages, treble damages or punitive damages, or any monetary damages not measured by the prevailing party's economic damages. The arbitrator will have no authority to award attorney's fees except as expressly provided by this Enrollment Agreement or authorized by law or the rules of the arbitration forum. <u>Class and consolidated actions</u> -- There shall be no right or authority for any claims within the scope of this Arbitration Agreement to be arbitrated or litigated on a class basis or for the claims of more than one Student to be arbitrated or litigated jointly or

30

consolidated with any other Student's claims. Arbitrator's Award -- At the request of either party, the arbitrator shall render a written award briefly setting forth his or her essential findings and conclusions. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction. Severability and right to waive -- If any part or parts of this Arbitration Agreement are found to be invalid or unenforceable by a decision of a tribunal of competent jurisdiction, then such specific part or parts shall be of no force and effect and shall be severed, but the remainder of this Arbitration Agreement shall continue in full force and effect. Any or all of the limitations set forth in this Arbitration Agreement may be specifically waived by the party against whom the claim is asserted. Such waiver shall not waive or effect any other portion of this Arbitration Agreement. Survival of provisions of this agreement -- This Arbitration Agreement will survive the termination of the Student's relationship with SBI.

CHIEF JUSTICE RABNER, JUSTICES LaVECCHIA and SOLOMON, and JUDGE CUFF (temporarily assigned), join in JUSTICE ALBIN's opinion. JUSTICE PATTERSON filed a separate, dissenting opinion. JUSTICE FERNANDEZ-VINA did not participate.

31

ANNEMARIE MORGAN and TIFFANY
DEVER,

        Plaintiffs-Appellants,

                v.

SANFORD BROWN INSTITUTE,
CAREER EDUCATION CORPORATION,
INC.,

        Defendants-Respondents,

                and

MATTHEW DIACONT, GREG LNU,
SALVATORE COSTA, JANET YOUNG,
and KRISTA HOLDEN,

        Defendants.


        JUSTICE PATTERSON, dissenting.

        If this appeal were to entail nothing more than an

application of the state law contract principles set forth in

Atalese v. U.S. Legal Services Group, 219 N.J. 430, 436 (2014),

cert. denied, __ U.S. __, 135 S. Ct. 2804, 192 L. Ed. 2d 847

(2015), I would join the majority.  In my view, that

determination would be a simple one; the arbitration clause in

dispute would not meet the standard that this Court articulated

in Atalese.


                                  1

This appeal, however, does not turn on an application of state contract law. Instead, it raises a discrete procedural question: whether plaintiffs preserved or waived their argument that the parties' arbitration agreement did not clearly and unmistakably assign to an arbitrator, rather than a court, the authority to decide whether the parties' dispute is arbitrable. That question is governed not by state law, but by federal law. In Rent-A-Center, W., Inc. v. Jackson, the United States Supreme Court held that an appellate court may entertain a challenge to a provision of an arbitration agreement that purports to assign questions of arbitrability to an arbitrator, only if the challenge to that provision was asserted before the trial court. 561 U.S. 63, 74-76, 130 S. Ct. 2772, 2780-81, 177 L. Ed. 2d 403, 414-15 (2010). On this issue of federal law, the United States Supreme Court's decision is binding on this Court.

As the majority concedes, plaintiffs did not interpose a challenge to the provision relied upon by defendants before the trial court in this case. Ante at ___ (slip op. at 21, 28). Indeed, they made no such contention before the Appellate Division, or in their petition for certification to this Court. In my view, that undisputed procedural history resolves this appeal under Rent-A-Center.

The majority offers two arguments as to why plaintiffs' failure to challenge the delegation provision before the trial

2

court should not defeat their claims. First, the majority posits that under Rent-A-Center, a plaintiff need only challenge a delegation provision before the trial court if that provision contains "clear and unmistakable language evidencing an agreement to delegate arbitrability," and that the language of the parties' contract falls short of that mark. Ante at ___ (slip op. at 18-19). That limitation on the procedural bar imposed in Rent-A-Center, supra, is nowhere to be found in the Supreme Court's holding; indeed, it directly contravenes that holding, as it is articulated in both Justice Scalia's majority opinion and Justice Stevens' dissent. See 561 U.S. at 72, 130 S. Ct. at 2779, 177 L. Ed. 2d at 413; id. at 76, 130 S. Ct. at 2781, 177 L. Ed. 2d at 415 (Stevens, J., dissenting). Moreover, the limitation postulated by the majority is inherently illogical; it would require an appellate court to determine the ultimate merits of a challenge to a delegation provision in order to decide whether or not the plaintiff's failure to assert that challenge before the trial court results in a waiver. In my view, our role is not to reformulate the holding of Rent-A-Center for purposes of this case, but to apply it. I am, therefore, unpersuaded by the majority's argument.

Second, the majority unaccountably contends that defendants' counsel failed to assert before the motion court defendants' claim that under the parties' arbitration agreement,

3

questions of arbitrability were delegated to an arbitrator, not to the court. That assertion is simply inaccurate. In their briefs to the trial court in support of their motion to compel arbitration, defendants set forth the relevant portions of the arbitration agreement, including the provision purporting to demonstrate the parties' agreement to arbitrate issues of arbitrability. Moreover, during oral argument before the trial court, defendants' counsel not only argued that the provision in dispute mandated that an arbitrator decide the question of arbitrability, but read the language of that provision to the court. Defendants' counsel also asked the court to refrain from deciding any issue in the case, including the issue of arbitrability. Neither plaintiff nor amicus curiae New Jersey Association for Justice (NJAJ) has ever suggested that defendants failed to raise the relevant issue before the trial court, and the record belies any such suggestion.

I concur with many of the contract principles articulated by the majority. In the procedural setting of this case, however, I cannot reconcile the majority's reasoning with the United States Supreme Court's decision in Rent-A-Center. In my view, the Appellate Division properly determined that an arbitrator, not a court, should decide the merits of plaintiffs' claims. Accordingly, I would affirm the judgment of the Appellate Division, and I respectfully dissent.

4

I.

This case is governed by the Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1-16, enacted "to abrogate the then-existing common law rule disfavoring arbitration agreements 'and to place arbitration agreements upon the same footing as other contracts.'" Martindale v. Sandvik, Inc., 173 N.J. 76, 84 (2002) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 111 S. Ct. 1647, 1651, 114 L. Ed. 2d 26, 36 (1991)). The FAA, and the federal case law that construes it, preempt any state law that would invalidate an arbitration agreement in a contract affecting interstate commerce. See 9 U.S.C.A. § 2 (asserting enforceability of arbitration provisions in "contract[s] evidencing . . . transaction[s] involving commerce"); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765, 785 (1983) ("The effect of . . . [S]ection [2] is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]."); Young v. Prudential Ins. Co. of Am., 297 N.J. Super. 605, 616 (App. Div.) ("The FAA preempts any state law purporting to invalidate an arbitration agreement involving interstate commerce."), certif. denied, 149 N.J. 408 (1997). Thus, federal law, not state law, controls the question raised in this appeal.

Under the FAA, a contract provision providing for arbitration of controversies between the parties "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. The FAA sets forth procedures for the determination of arbitrability mandated by 9 U.S.C.A. § 2:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.
>
> [9 U.S.C.A. § 4.]

As a general principle, whether the parties have agreed at all to submit their dispute to arbitration "is typically an 'issue for judicial determination.'" Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296, 130 S. Ct. 2847, 2855, 177 L. Ed. 2d 567, 576 (2010) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S. Ct. 588, 591, 154 L. Ed. 2d 491, 497 (2002)); see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S. Ct. 1801, 1806, 18 L. Ed. 2d 1270, 1277 (1967) (holding "if the claim . . . goes to

6

the 'making' of the agreement to arbitrate[,] . . . the . . . court may proceed to adjudicate it").

That principle was applied by the United States Supreme Court in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-45, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985, 994 (1995). In First Options, the party seeking a ruling that the question of arbitrability should be referred to an arbitrator, instead of a court, did not point to any language in the parties' agreement that delegated the question of arbitrability to the arbitrator; instead, it relied on the opposing party's conduct in having argued the question of arbitrability before the arbitrator. 514 U.S. at 946, 115 S. Ct. at 1925, 131 L. Ed. 2d at 994. The Supreme Court rejected the claim that the parties' conduct evinced an intent that an arbitrator determine whether their underlying dispute was arbitrable. Id. at 946-47, 115 S. Ct. at 1925-26, 131 L. Ed. 2d at 994-95. In language cited by the majority in this appeal, the Supreme Court held:

> When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally (though with a qualification we discuss below) should apply ordinary state-law principles that govern the formation of contracts. . . . The relevant state law here, for example, would require the court to see whether the parties objectively revealed an intent to submit the arbitrability issue to arbitration.
>
> [Id. at 944, 115 S. Ct. at 1924, 131 L. Ed. 2d at 993 (citations omitted).]

7

The "important qualification" identified in First Options applies "when courts decide whether a party has agreed that arbitrators should decide arbitrability." Ibid. In contrast to its recognition of a presumption in favor of arbitration that generally governs the merits of the arbitrability issue, the United States Supreme Court held that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." Ibid. (alteration in original) (quoting AT&T Techs., Inc. v. Communs. Workers of Am., 475 U.S. 643, 649, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648, 656 (1986)).

The Supreme Court's decision in First Options provides the backdrop to the decision most directly relevant to this appeal, Rent-A-Center. There, in contrast to the setting of First Options, the defendant cited language in the arbitration agreement that, it claimed, assigned the question of arbitrability to an arbitrator. Rent-A-Center, supra, 561 U.S. at 65-66, 130 S. Ct. at 2775, 177 L. Ed. 2d at 408-09. Before the trial court, the plaintiff challenged the arbitration agreement on the grounds that it was unconscionable, but did not dispute the import of the provision on which the defendant relied. Id. at 72-73, 130 S. Ct. at 2779-80, 177 L. Ed. 2d at 413. Reversing the district court's determination that the

parties' dispute was arbitrable, the Court of Appeals for the Ninth Circuit held that notwithstanding a contractual provision that assigns the question of arbitrability to the arbitrator, the plaintiff's claim of unconscionability should be determined by the court. Jackson v. Rent-A-Center, W., Inc., 581 F.3d 912, 918-19 (9th Cir. 2009), rev'd, 561 U.S. at 76, 130 S. Ct. at 2781, 177 L. Ed. 2d at 415 (2010).

In a five-to-four decision, the Supreme Court reversed the Ninth Circuit's determination. Rent-A-Center, supra, 561 U.S. at 76, 130 S. Ct. at 2781, 177 L. Ed. 2d at 415. Writing for the majority, Justice Scalia construed the arbitrability provision at issue -- termed the "delegation provision" by the parties -- to be a separate, distinct agreement, severable from the remainder of the parties' contract. Id. at 71-72, 130 S. Ct. at 2778-79, 177 L. Ed. 2d at 412-13.[9] In light of that conclusion, the Supreme Court majority stated the holding that, in my view, determines this appeal. It held that, unless the plaintiff "challenged the delegation provision specifically, we

---

[1] Responding to Justice Stevens' disagreement with the majority's view on the question of severability, Justice Scalia stated that "[t]he issue of the agreement's 'validity' is different from the issue whether any agreement between the parties 'was ever concluded,' and . . . we address only the former." Rent-A-Center, supra, 561 U.S. at 70 n.2, 130 S. Ct. at 2778 n.2, 177 L. Ed. 2d at 412 n.2 (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 n.1, 126 S. Ct. 1204, 1208 n.1, 163 L. Ed. 2d 1038, 1043 n.1 (2006)).

must treat it as valid under [9 U.S.C.A.] § 2, and must enforce it under [9 U.S.C.A.] §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." Id. at 72, 130 S. Ct. at 2779, 177 L. Ed. 2d at 413. The Court stated that although the plaintiff had generally attacked the arbitration provision as "procedurally and substantively unconscionable," he had asserted no challenge "specific to the delegation provision." Id. at 73-74, 130 S. Ct. at 2780, 177 L. Ed. 2d at 413-14. The Supreme Court noted that, in the proceedings before it, the plaintiff contended for the first time that "that the delegation provision itself is substantively unconscionable" because he received no "quid pro quo" for his agreement, but dismissed that argument, holding that the plaintiff had "brought this challenge to the delegation provision too late, and we will not consider it." Id. at 75-76, 130 S. Ct. at 2781, 177 L. Ed. 2d at 415.

Justice Stevens, writing for the dissenting justices, pointedly criticized the majority's holding. Observing that neither party had urged the Court to adopt a waiver rule, Justice Stevens articulated that holding as follows:

> Neither petitioner nor respondent has urged us to adopt the rule the Court does today: Even when a litigant has specifically challenged the validity of an agreement to arbitrate he must submit that challenge to the arbitrator unless he has lodged an objection to the particular line in the agreement that purports

10

to assign such challenges to the arbitrator --
the so-called "delegation clause."

[Id. at 76, 130 S. Ct. at 2781, 177 L. Ed. 2d
at 415 (Stevens, J., dissenting) (emphasis in
original).]

Justice Stevens asserted that the Supreme Court majority could have resolved the issue in favor of the plaintiff by applying the First Options standard -- whether the arbitration agreement "clearly and unmistakably" expressed the parties' intent to submit questions of arbitrability to the arbitrator. Id. at 80, 130 S. Ct. at 2784, 177 L. Ed. 2d at 418. He noted that under Prima Paint, a challenge to the legality of an arbitration agreement would be determined by the arbitrator, so long as that challenge was based on "some reason unrelated to the arbitration provision." Id. at 86, 130 S. Ct. at 2787, 177 L. Ed. 2d at 421-22. Justice Stevens rejected the majority opinion as an unwarranted and unduly exacting extension of the Court's prior holding in Prima Paint:

> Before today, however, if respondent instead raised a challenge specific to "the validity of the agreement to arbitrate" -- for example, that the agreement to arbitrate was void under state law -- the challenge would have gone to the court. . . . But the Court now declares that Prima Paint's pleading rule requires more: A party must lodge a challenge with even greater specificity than what would have satisfied the Prima Paint Court. A claim that an entire arbitration agreement is invalid will not go to the court unless the party challenges the particular sentences that delegate such claims to the arbitrator, on

11

some contract ground that is particular and unique to those sentences.

[Ibid. (citing Buckeye, supra, 546 U.S. at 444, 126 S. Ct. at 1208, 163 L. Ed. 2d at 1042-43) (emphasis in original).]

Thus, although they sharply disputed the wisdom of the rule stated in Rent-A-Center, the Supreme Court majority and dissenting opinions concurred on the scope of that rule. Compare id. at 72, 130 S. Ct. at 2779, 177 L. Ed. 2d at 413, with id. at 76, 130 S. Ct. at 2781, 177 L. Ed. 2d at 415 (Stevens, J., dissenting). If a party does not specifically challenge, before the trial court, a provision in an arbitration agreement that purports to assign the question of arbitrability to an arbitrator, that challenge is deemed by the appellate court to be waived, and the arbitration agreement is enforced under Section 2 of the FAA. See id. at 75-76, 130 S. Ct. at 2781, 177 L. Ed. 2d at 415.

Importantly, the party who did not assert a challenge before the trial court does not forego his or her right to challenge the arbitrability of the dispute. See id. at 71, 130 S. Ct. at 2778, 177 L. Ed. 2d at 412 (indicating that although court will not intervene, dispute will be resolved by arbitrator). However, he or she must dispute that issue before the arbitrator, not the court. Ibid. The arbitrator then determines whether the parties entered into an agreement to

12

arbitrate, as a matter of state contract law. See First Options, supra, 514 U.S. at 944, 115 S. Ct. at 1924, 131 L. Ed. 2d at 993. Thus, the state law contract principles invoked by the majority in this case will play a dispositive role, whether or not an application of Rent-A-Center mandates that an arbitrator, rather than a court, determine the dispute over arbitrability. See, e.g., Apache Bohai Corp. LDC v. Texaco China BV, 480 F.3d 397, 408 n.13 (5th Cir. 2007) ("Arbitrators 'should apply the basic principles of contract law to which the parties have referred' in their choice of law clause." (citation omitted)); Delta Funding Corp. v. Harris, 466 F.3d 273, 274 (3d Cir. 2006) (highlighting "identified general principles of New Jersey contract law that . . . arbitrator[s] can apply to the agreement[s]"); Solvay Pharms., Inc. v. Duramed Pharms., Inc., 442 F.3d 471, 485 (6th Cir. 2006) (acknowledging "[state] contract law governs how the arbitrators should have constructed the documents").

I respectfully submit that the Supreme Court's decision in Rent-A-Center compels the conclusion reached by the Appellate Division in this case: that the question of arbitrability must be decided by an arbitrator. As the majority necessarily acknowledges, plaintiffs did not challenge before the trial court the contract language that defendants invoked on the question of arbitrability. Ante at ___ (slip op. at 21, 28).

13

Plaintiffs' theories at that stage were entirely distinct from a challenge to the arbitrability language on which defendants relied. They argued that defendants had failed to disclose the two pages on which the arbitration agreement appeared to plaintiffs before they signed their agreement, and that the arbitration agreement as a whole was void as inconsistent with public policy and New Jersey law, specifically the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -200, and principles of equity. Plaintiffs made essentially the same contentions before the Appellate Division and this Court, contesting the application of federal law to this case.[10]

Accordingly, under the rule stated by the United States Supreme Court in Rent-A-Center, plaintiffs clearly waived their challenge to the delegation provision, and the question of arbitrability should be determined by an arbitrator, applying principles of New Jersey contract law.

## II.

The majority posits two arguments in support of its conclusion that notwithstanding Rent-A-Center, plaintiffs' challenge to the delegation provision was preserved. First, the majority narrows the Rent-A-Center test to find a waiver only if

---

[2] It appears that it was amicus curiae NJAJ, not plaintiffs, that first raised the contention adopted by the majority here -- that the arbitrability provision was not clear and unmistakable, and was therefore unenforceable under First Options and Atalese.

14

the disputed language in the arbitration agreement is found to be clear and unmistakable. _Ante_ at ___ (slip op. at 18-19). Second, the majority claims that defendants failed to assert, before the trial judge, that the question of arbitrability should be sent to an arbitrator. _Ante_ at ___ (slip op. at 3, 8, 20-21). For the reasons that follow, I find both arguments meritless.

Faced with the undisputed fact that plaintiffs did not do what _Rent-A-Center_ required them to do to preserve their challenge for appeal, the majority contends that the rule stated in _Rent-A-Center_ does not extend to this case. _See_ _ante_ at ___ (slip op. at 18-21). Without citation to _Rent-A-Center_, the majority states that the Supreme Court "presupposed a clearly identifiable delegation clause that would be apparent to the parties." _Ante_ at ___ (slip op. at 18). It reasons that because the delegation provision in _Rent-A-Center_ met the "clear and unmistakable" standard of _First Options_, whereas the disputed provision in this case does not, the _Rent-A-Center_ waiver rule does not govern this case. _Ante_ at ___ (slip op. at 18-21).

That argument plainly misstates the United States Supreme Court's holding, which includes none of the limiting language that the majority postulates. The rule of _Rent-A-Center_ is not restricted to cases involving contract language that is

15

ultimately found to meet the "clear and unmistakable" standard of First Options, as the disputed language in Rent-A-Center did. Instead, the Supreme Court majority stated that, unless the plaintiff "challenged the delegation provision specifically" before the trial court that provision is treated as valid under Section 2 of the FAA. Rent-A-Center, supra, 561 U.S. at 72, 130 S. Ct. at 2779, 177 L. Ed. 2d at 413.[11] It offered no caveats or exceptions to that general rule.

That conclusion is underscored by Justice Stevens' vigorous dissent. In his critique of the United States Supreme Court majority's holding, Justice Stevens did not characterize that holding to require waiver only in the event that the arbitrability provision "clearly and unmistakably" assigns the dispute to an arbitrator. See Rent-A-Center, supra, 561 U.S. at

---

[3] In an effort to distinguish Rent-A-Center, the majority characterizes the issue raised by plaintiffs before the trial court to be "whether the parties formed a contract -- that is, whether the parties concluded an agreement," whereas "the primary issue in Rent-A-Center dealt with the validity of an employment contract that the plaintiff claimed was unconscionable." Ante at ___ (slip op. at 19) (emphasis in original). In fact, as the majority acknowledges elsewhere in its opinion, plaintiffs contended before the trial court that "the arbitration provision was unconscionable and therefore void because its terms were at odds with the [CFA]'s allowance of treble damages and attorney's fees." Ante at ___ (slip op. at 9). Plaintiffs' challenge to the arbitration provision as contrary to New Jersey law and public policy is, like the unconscionability argument raised in Rent-A-Center, supra, a challenge to the validity of the contract, not its formation. See 561 U.S. at 66, 130 S. Ct. at 2775, 177 L. Ed. 2d at 409.

16

76, 130 S. Ct. at 2781, 177 L. Ed. 2d at 415 (Stevens, J.,

dissenting).  On the contrary, Justice Stevens faulted the

majority for requiring "an objection to the particular line in

the agreement that purports to assign such challenges to the

arbitrator -- the so-called 'delegation clause.'"  Ibid.

(emphasis added).  Clearly, Justice Stevens viewed the majority

opinion to require a challenge before the trial court of any

delegation clause that "purports" to assign the issue of

arbitrability to the arbitrator -- whether the provision is

ultimately found to be clear or ambiguous, enforceable or void.

Ibid.  Accordingly, the majority and dissenting opinions agreed

on the scope of the Rent-A-Center rule:  it applies to all

disputed clauses that purport to assign the arbitrability

question to an arbitrator, not only to those that are ultimately

vindicated as "clear and unmistakable."  See id. at 72, 130 S.

Ct. at 2779, 177 L. Ed. 2d at 413; id. at 76, 130 S. Ct. at

2781, 177 L. Ed. 2d at 415 (Stevens, J., dissenting).  Thus, I

respectfully submit, the majority in this appeal has simply

misstated the Supreme Court's holding.

Indeed, by virtue of the limitation on the Rent-A-Center

holding suggested by the majority, the question of waiver would

turn on the ultimate merits of the appeal.  If, as here, a party

does not challenge a delegation provision at trial, but that

issue is contested before an appellate court, the majority would

17

find a waiver only if the provision were found to be "clear and unmistakable." Ante at ___ (slip op. at 18-19). That crucial determination would not be made by an arbitrator, because no arbitrator would yet be involved in the case. It would not be made by the trial judge, before whom no challenge had been asserted. It is the appellate court that would, in the first instance, decide the dispositive issue in the case, in order to determine whether the absence of a challenge before the trial court effected a waiver of that challenge on appeal. The ultimate merits of the challenge would drive the question of waiver: if the appellate court agreed that the provision is unclear, then a party's failure to raise the issue would have no consequence; if not, the appellate court would find that the party had waived the challenge. I respectfully submit that the majority's proposed rule invites an appellate court to place the proverbial cart before the horse, and to apply a substantive, merits-based test to the procedural question of waiver.

The majority's second contention -- that defendants failed to assert before the trial court that questions of arbitrability should be assigned to the arbitrator -- is no more persuasive. Ante at ___ (slip op. at 3, 8, 20-21). Neither plaintiff nor amicus curiae NJAJ ever contended that defendants had failed to raise the delegation provision in the trial court -- and for good reason. In their brief in support of their motion to

18

compel arbitration, defendants provided the relevant portions of the arbitration agreement, including a reprint of subsection (v), the provision which directs that "any objection to arbitrability" be resolved by an arbitrator.  Further, defendants' reply brief to the trial court specifically highlights that "[plaintiffs'] attack on the Enrollment Agreements is a non-starter because, as the Supreme Court held in [Prima Paint], attacks on the contract containing an arbitration provision are for the arbitrator -- not the court -- to decide."  Defendants argued that although plaintiffs have challenged the validity of the Enrollment Agreements, they have not specifically objected to the parties' agreement that arbitrability issues be decided by an arbitrator.

Moreover, at the hearing on defendants' motion to compel arbitration, defense counsel clearly argued before the motion court that any dispute, including arbitrability, is for the arbitrator to decide.  The transcript of that hearing includes the following statements by defendants' counsel:

> The second point is the arguments that they are making are arguments that need to be directed towards the arbitrator, not Your Honor, because the arguments that they make, they bring up fraud, they bring up duress in a conclusory manner, these are arguments that are attacking the arbitration agreement -- that are attacking the contract as a whole, and under federal law, under New Jersey law, which follows the same principle, when you are raising an argument that attacks the entire

19

agreement, those are arguments that must be advanced to the arbitrator after the matter has been compelled into arbitration. And indeed when you look at the scope of this agreement it covers any objection to arbitrability, or the existence, scope, validity, construction or enforceability of this arbitration agreement shall be resolved pursuant to this paragraph, so very broadly channels disputes like those that have been raised by the plaintiffs in this case for the arbitrator to decide.

With those words, defendants' attorney alerted the court to his clients' position that the parties' arbitration agreement contained a clause that assigned all issues involving "arbitrability," as well as the "existence, scope, validity, construction or enforceability" of the agreement, to the arbitrator. Defendants' counsel urged the court to "look at the scope" of the agreement, and actually recited the relevant portions of the agreement to the trial judge. Our case law properly finds issues to be preserved by virtue of assertions by counsel that state a position much less clearly than what was argued here. See, e.g., State v. Arthur, 184 N.J. 307, 345-46 n.8 (2005) (Albin, J., dissenting) (arguing party's briefs "sufficiently touch[ing] the issue" successfully preserves question for review); Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 165 n.3 (2003) (recognizing liberal construction of pleadings for purposes of preserving claims); State v. Velez, 335 N.J. Super. 552, 556-58 (App. Div. 2000) (finding counsel

20

raised issue of racial profiling by generally describing practice, although he did not use term "racial profiling"). Defendants easily satisfied the standard that has traditionally applied to questions of waiver.

The majority finds three deficiencies in defendants' counsel's presentation of the issue to the trial court. First, the majority emphasizes that defendants' counsel did not use the term "delegation clause." Ante at ___ (slip op. at 8). As confirmed by the majority and dissenting opinions in Rent-A-Center, however, the terms "delegation clause" and "delegation provision" were used by the parties and the Supreme Court as convenient terminology to denote the contract language. See Rent-A-Center, supra, 561 U.S. at 68, 130 S. Ct. at 2777, 177 L. Ed. 2d at 410-11; id. at 76, 82, 130 S. Ct. at 2781, 2785, 177 L. Ed. 2d at 415, 419 (Stevens, J., dissenting).[12] The Supreme Court majority stated, "[a]dopting the terminology used by the parties, we will refer to [the disputed provision] as the delegation provision." Rent-A-Center, supra, 561 U.S. at 68, 130 S. Ct. at 2777, 177 L. Ed. 2d at 410-11. Justice Stevens called the contract language the "so-called 'delegation clause.'" Id. at 76, 130 S. Ct. at 2781, 177 L. Ed. 2d at 415. Thus, contrary to the majority's suggestion, the term

---

[4] Neither term appears in the Ninth Circuit opinion. See generally Rent-A-Center, supra, 581 F.3d 912.

21

"delegation clause" was not a term of art with independent significance that defendants were required to invoke in order to preserve the issue for appeal, but a shorthand label for the disputed provision. Defendants' counsel, who read the entire provision to the trial court, was not obliged to use that label for the provision in order to preserve his clients' argument for appeal.

Second, the majority finds significance in the fact that defense counsel did not "even once cite Rent-A-Center before the motion court." Ante at \_\_\_ (slip op. at 20). It is not surprising that defendants did not cite Rent-A-Center before the motion court; any such citation would have been premature. When the parties in this case appeared before the trial court, the waiver issue had yet to arise, and there was no reason for defendants to cite Rent-A-Center at that stage.

Finally, the majority contends that defendants failed to argue before the motion court "that it lacked jurisdiction to decide whether the parties agreed to arbitration because that role was for the arbitrator alone." Ante at \_\_\_ (slip op. at 20). The very motion made by defendants -- a motion to compel arbitration and dismiss the complaint, or, in the alternative, to stay the action pending arbitration -- was a challenge to the court's jurisdiction to decide the parties' entire dispute, including the arbitrability of that dispute. When defendants'

22

counsel told the motion court that plaintiffs' contentions "are arguments that must be advanced to the arbitrator after the matter has been compelled into arbitration," and that the question of arbitrability, among other issues, was "for the arbitrator to decide," he was respectfully advising the trial court that it lacked jurisdiction to resolve those issues.[13]

The majority has abandoned the lenient standard that has historically governed the question of whether an attorney has raised an issue before the trial court, and replaced it with a formulaic roster of specific terms that must be used by counsel to preserve an argument for appeal. I respectfully submit that the majority's new benchmark for attorneys is impractical and unwarranted.

In sum, I concur with the Appellate Division panel's conclusion that pursuant to the United States Supreme Court's decision in Rent-A-Center, the parties' dispute regarding arbitrability should be decided by an arbitrator.[14] I would

---

[5] Notwithstanding defendants' specific request that the motion judge refer arbitrability and other issues to the arbitrator, the majority opines that "[d]efendants filed a motion to compel arbitration, but did not make clear that they wanted the arbitrator, rather than the court, to decide whether the parties agreed to arbitration." Ante at ___ (slip op. at 3).

[6] I do not concur in the portion of the Appellate Division panel's opinion that analyzed the parties' agreement, notwithstanding the panel's conclusion that an arbitrator should decide the question of arbitrability.

affirm the judgment of the Appellate Division panel, and I respectfully dissent.

SUPREME COURT OF NEW JERSEY

NO.     A-31                          SEPTEMBER TERM 2014

ON CERTIFICATION FROM          Appellate Division, Superior Court


ANNEMARIE MORGAN and TIFFANY DEVER,

     Plaintiffs-Appellants,

          v.

SANFORD BROWN INSTITUTE, CAREER
EDUCATION CORPORATION, INC.,

     Defendants-Respondents,

         and

MATTHEW DIACONT, GREG LNU,
SALVATORE COSTA, JANET YOUNG, and
KRISTA HOLDEN,

     Defendants.



DECIDED          June 14, 2016
          Chief Justice Rabner                    PRESIDING

OPINION BY      Justice Albin

CONCURRING/DISSENTING OPINION BY

DISSENTING OPINION BY      Justice Patterson

| CHECKLIST | REVERSE AND REMAND | DISSENT |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | | X |
| JUSTICE FERNANDEZ-VINA | ----------------- | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 5 | 1 |