**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4215-19

SUNDRE STROWBRIDGE,

    Plaintiff-Respondent,

v.

BARRY C. FREEMAN, M.D.,

    Defendant,

and

1515 LAMBERTS MILL ROAD
OPERATIONS, LLC d/b/a
WESTFIELD CENTER and GENESIS
HEALTHCARE INCORPORATED,

    Defendants-Appellants.

_____

Argued February 1, 2021 – Decided April 13, 2021

Before Judges Rothstadt and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-4479-19.

Philip J. Anderson argued the cause for appellants (Buchanan Ingersoll & Rooney, PC, attorneys; David

L. Gordon, Philip J. Anderson and Brooke R. Weidhaas, of counsel and on the briefs).

Alexandra Loprete argued the cause for respondent (O'Connor Parsons Lane & Noble, LLC, attorneys; Gregory B. Noble, of counsel; Alexandra Loprete and Meredith Mona, on the brief).

PER CURIAM

After suffering injuries as a pedestrian who was struck by an automobile, plaintiff Sundre Strowbridge was admitted into the nursing facility owned and operated by defendants 1515 Lamberts Mill Road Operations, LLC, d/b/a Westfield Center,[1] and Genesis Healthcare, Inc. Almost two years later, plaintiff filed a complaint against defendants alleging claims of among other things, sexual harassment, negligent hiring and supervision, violation of the Nursing Home Responsibilities and Rights of Residents Act (NHRRA), N.J.S.A. 30:13-1 to -17, violations of New Jersey's Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, and medical and nursing malpractice.[2] Thereafter, defendants filed a motion to compel arbitration, which Judge Alan G. Lesnewich

_____

[1]  1515 Lamberts Mill Road Operations, LLC d/b/a Westfield Center was improperly pled as "Genesis Westfield Center."

[2]  Plaintiff's complaint included claims against her primary care physician, defendant Barry C. Freeman, M.D. who is not participating in this appeal.

denied without prejudice on June 11, 2020, subject to the completion of discovery as to whether the parties ever entered into an agreement to arbitrate.

On appeal from that order, defendants do not challenge the relief granted. Rather, they contend that in the motion judge's written decision, he incorrectly determined the alleged arbitration agreement's delegation clause was ambiguous. We disagree and affirm substantially for the reasons stated by Judge Lesnewich in his cogent statement of reasons that accompanied the order under appeal.

We summarize the facts from the motion record as follows. Defendants' motion sought to compel arbitration of the claims raised in plaintiff's complaint. Defendants relied upon an arbitration agreement that plaintiff allegedly signed upon admission to defendants' facility. The document stated, "THIS AGREEMENT WAIVES THE RIGHT TO A TRIAL BY JUDGE OR JURY. PLEASE READ CAREFULLY."

Paragraph One labelled "Arbitration" explained that "[a]rbitration is an alternative means of resolving a dispute without involving the courts. In using arbitration, the dispute is heard and decided by one or more individuals called arbitrator(s). The dispute will not be heard or decided by a judge or jury."

Under Paragraph Two, labelled "Disputes to be Arbitrated," the agreement stated that "[a]ny and all claims or controversies arising out of or in any way relating to this Agreement or the Patient's stay at the Center . . . including disputes regarding interpretation and/or enforceability of this Agreement . . . shall be submitted to binding arbitration."

Paragraph Five explained that "[b]y signing this Agreement, the parties are waiving (giving up) their right to have any claim decided in a court of law before a judge and/or jury."

Paragraph Nine labelled "Arbitrator or Arbitration Panel" stated in relevant part that "[t]he Arbitrator shall resolve all gateway disputes regarding the enforceability, validity, severability and/or interpretation of this Agreement, as well as resolve issues involving procedure, admissibility of evidence, discovery or any other issue."

The final page of the agreement was a signature page, and included plaintiff's purported signature, although it was not dated. It also included an attestation that the parties confirmed they read all four pages of "this agreement" and understood that by signing, they "waived the right to a trial by judge or jury . . . and . . . underst[ood] that this agreement [was] voluntary and [was] not a precondition to receiving services at the center."

4

Plaintiff opposed defendants' motion with her certification and another certification from her attorney. In her certification, plaintiff explained that when she arrived at defendants' facility, she was in traction and heavily medicated for pain after just having surgery. She remembered being very groggy at the time and that she could not move because she was confined by traction.

Plaintiff recalled being handed a "stack of several papers" to sign and "being told I needed to sign and initial all of them where indicated to be admitted." She had no recollection of who handed her the papers or what date she was given the papers, but did remember that the person "said nothing to me about their contents, except that I had to sign on that day if I wanted to be admitted to the nursing home."

No one explained the documents to plaintiff or told her she was giving up her rights or that she could be admitted without signing them. Plaintiff claimed that she would have spoken with an attorney before signing if she knew that a waiver of her rights was included. In addition, plaintiff certified that although defendants gave her a copy of the documents included in her admissions packet, they did not include a copy of any arbitration agreement.

In plaintiff's counsel's certification, she stated that she requested plaintiff's medical records from defendants. Their response did not include the arbitration

5

agreement, but they did "include a signature form at the end of the 'admission agreement' with only one paragraph about arbitration." Counsel explained that the first time she and plaintiff saw the arbitration agreement was upon receiving defendants' motion to compel arbitration.

The parties argued the motion before the judge on June 5, 2020. Defendants' attorney stated that the "singular issue" before the judge was "whether or not there was a valid contract formed when [plaintiff] executed or signed the voluntary, binding arbitration agreement." The parties did not dispute that to the extent there was any question about formation of the agreement, the judge would be able to decide that issue after allowing for a period of discovery and conducting a plenary hearing.

On June 11, 2020, the judge entered an order denying the motion without prejudice to allow the parties to engage in discovery in preparation for a hearing on the issues related "to efficacy of the [a]rbitration [a]greement," and set forth his reasons in his accompanying statement of reasons. In his decision, the judge pointed out that defendants did not file a certification from anyone who had knowledge of the circumstances surrounding plaintiff's admission and her signing any documents, although the documents disclosed the name of defendants' representative who signed on their behalf.

The judge also stated that "[t]he initial issue to be determined by the court is whether this matter should be from the inception stayed and sent to an arbitrator for interpretation even as to its arbitrability.[3]" He then explained that the law presumes a court decides any issue concerning arbitrability, and to overcome that presumption, "an arbitration clause must contain 'clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.'"

The judge continued by stating that the delegation language in defendants' agreement was ambiguous. He found the delegation language was similar to the agreement at issue in Morgan because there was no separately defined "delegation clause" in the agreement, the term delegate did not appear in the agreement, and as he explained, "there [was] no sentence, paragraph[,] or section of this agreement that explains to a lay person that an arbitrator will decide whether the parties agreed to arbitrate legal claims, including statutory violations." Moreover, although the agreement referred to "gateway issues" there was "[n]o specific explanation . . . provided in a way that a lay person could easily understand." It was significant to the motion judge that Paragraphs Two and Nine of the agreement respectively did not state that "by signing the

---

[3] "Arbitrability is whether the parties have agreed to submit to an arbitrator or a court the authority to decide whether a dispute is subject to arbitration." Morgan v. Sanford Brown Inst., 225 N.J. 289, 295 n.1 (2016).

A-4215-19

[agreement] plaintiff is giving up her right to have a [c]ourt decide whether the parties agreed to arbitrate legal claims and statutory violations."

The judge turned to plaintiff's certification and observed "where a party opposes a motion to compel arbitration based on a certification attesting that he or she never entered into an agreement to arbitrate the court must first address that threshold issue before moving on to some of the other potentially pertinent issues." Because "[t]hat is the present posture of the matter before this court[,]" he determined that the matter must be "set for a plenary hearing to resolve the conflicting factual contentions on the threshold issue of whether plaintiff entered into an enforceable arbitration agreement."

Relying on Midland Funding v. Bordeaux, 447 N.J. Super. 330, 336 (App. Div. 2016), he also explained that at the hearing, defendants will have the burden to prove, by a preponderance of the evidence, that plaintiff assented to the purported agreement. He also cited to Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 214 (2009) and stated that the parties will have an opportunity for limited discovery on the issue of mutual assent. The judge permitted the parties to "engage in discovery in preparation for a hearing on the issues related to efficacy of the [a]rbitration [a]greement." This appeal followed.

Our review of an order denying a motion to compel arbitration is de novo. Knight v. Vivint Solar Dev., LLC, 465 N.J. Super. 416, 425 (App. Div. 2020) (citing Goffe, 238 N.J. at 207). When reviewing a motion to compel arbitration, the court applies a two-prong inquiry: (1) whether there is a valid and enforceable agreement to arbitrate disputes, and (2) whether the dispute falls within the scope of the agreement. Martindale v. Sandvik, Inc., 173 N.J. 76, 86, 92 (2002).

As already noted, on appeal, defendants state they are not challenging the court's "jurisdiction to decide issues regarding contract formation. In fact [they] concede that the [court] has the power to decide issues related to contract formation." They "are only seeking a reversal of the [court's] premature and erroneous finding that the Agreement's delegation clause is ambiguous and, thus, unenforceable." We find no merit to their concern about the agreement's language to the extent it relates to any issue that may arise if a trial judge determines a binding agreement to arbitrate was formed.

When a judge is "called on to enforce an arbitration agreement, [the judge's] initial inquiry must be—just as it is for any other contract—whether the agreement to arbitrate all, or any portion, of a dispute is 'the product of mutual assent, as determined under customary principles of contract law.'" Flanzman

v. Jenny Craig, Inc., 244 N.J. 119, 137 (2020) (quoting Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 319 (2019)). "Under state law, 'if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract.'" Id. at 135 (quoting Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992)).

"An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" Atalese v. U.S. Legal Servs. Grp., LP, 219 N.J. 430, 442 (2014) (quoting NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011)). "Simply put, without an agreement to arbitrate, there can be no arbitration." MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds, 974 F.3d 386, 397 (3d Cir. 2020).

"[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (2019). "Unless the parties have clearly delegated to an arbitrator the decision whether the parties agreed to arbitration, the issue is for a court to resolve." Morgan, 225 N.J. at 295-96; see also Knight, 465 N.J. Super. at 428 (holding that "the trial court initially resolves the issues of fact pertaining to the formation of the

arbitration provision"); Henry Schein, Inc., 139 S. Ct. at 530 ("[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."); MZM Constr. Co., 974 F.3d at 402 ("[U]nder section 4 of the [Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to 16], courts retain the primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision.").  Whether the parties "clearly delegated" that threshold question about the formation of the agreement to an arbitrator is to be determined by a judge applying the same "elements necessary for the formation of a contract under state law."  Morgan, 225 N.J. at 295.

Applying these controlling principles, we conclude, as the parties concede, there was no error in the relief granted by the motion.  Moreover, contrary to defendants' contention on appeal, the judge only determined that the purported agreement did not clearly delegate the threshold question of formation to an arbitrator.  He looked at the language of the alleged agreement and found that any argument that a court should not make that determination was at best supported only with ambiguous language that did not clearly require the issue of formation to be sent to an arbitrator.

Thus, contrary to defendant's concerns on appeal, the judge's determination did not resolve any question about the arbitrability of any other issue that may arise if a judge determines that a contract was formed. The issue of arbitrability was not the issue the motion judge ruled upon. Rather, as he and the parties all seemed to understand, the issue was whether there ever was an agreement to arbitrate in the first place in light of plaintiff's contentions made in opposition to defendants' motion. The challenged comment about ambiguity went only to the judge's correct determination that the issue before him—formation of the agreement—had to be decided by a court and not an arbitrator. The ambiguity he found merely confirmed that it was his obligation to determine the threshold issue rather than an arbitrator.

If after a plenary hearing the threshold question of whether an agreement exists is resolved in the affirmative, the parties will then be free to argue the arbitrability or enforceability of other matters under the agreement, and whether a judge or an arbitrator must resolve the issue. Until then, there is simply no issue as to the purported agreement's application to any dispute or claim.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4215-19