**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3319-23

MICHAEL T. MACK,

    Plaintiff-Appellant,

v.

WELLS FARGO BANK, N.A.,

    Defendant-Respondent.

_____

Argued January 8, 2025 – Decided February 18, 2025

Before Judges Rose, DeAlmeida and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-2113-23.

Joseph M. Pinto argued the cause for appellant (Polino and Pinto, PC, attorneys; Joseph M. Pinto, on the briefs).

Justin E. Kerner argued the cause for respondent (Ballard Spahr LLP, attorneys; Justin E. Kerner, on the brief).

PER CURIAM

Plaintiff Michael T. Mack appeals from the June 20, 2024 Law Division order granting defendant Wells Fargo Bank, N.A.'s motion to compel arbitration and stay the proceedings. We reverse.[1]

I.

Plaintiff held personal and business checking and savings accounts with defendant. In May 2022, an unknown individual transferred and then withdrew approximately $160,000 from plaintiff's business accounts without his authorization. Plaintiff reported the transfer to defendant, asserting it was fraudulent. He then opened new accounts to prevent further fraudulent withdrawals and, two weeks later, defendant credited the misappropriated funds to plaintiff's savings account.

In August 2023, an individual accessed plaintiff's new business accounts without his consent, transferred $45,000 from his savings account into his checking account, and then requested a wire transfer. Plaintiff received a phone

---

[1] This opinion was scheduled to be released on February 12, 2025. On February 7, 2025, plaintiff's counsel submitted a letter to the court advising the parties settled the matter. The letter was deemed deficient because it did not attach a stipulation of dismissal, which is required for the court to dismiss the appeal. Because a stipulation has not been timely filed and this accelerated case was argued on January 8, 2025, we issue this opinion and remind counsel of their obligation to expeditiously notify the court of a settlement in order to avoid wasting judicial resources. Sessner v. Merck Sharp & Dohme Corp., 435 N.J. Super. 347, 349 (App. Div. 2014).

call with a caller identification of Wells Fargo Bank. The caller stated plaintiff's checking account was hacked and must be closed. Purportedly to close the account, the caller then requested, and plaintiff provided, codes that were sent via text message to plaintiff. Someone then wired $18,900 from plaintiff's account to another unknown individual.

Plaintiff denied having initiated the transfer and, because he never wired funds from any of his accounts with defendant, was unaware of the valid procedure. He immediately reported the fraudulent transactions to defendant, which was unable to rescind the transfer.

The next day, plaintiff received a letter[2] from defendant advising that its investigation revealed $45,000 was transferred from plaintiff's checking account into his savings account. According to the letter, plaintiff's "claim regarding [the] transaction totaling $18,900 was not related to an online fraud event," and therefore could not be resolved. Plaintiff's claim was then forwarded to another department for possible resolution.

One week later, plaintiff received a letter from defendant stating its investigation determined that the transaction was performed by plaintiff or someone using his username and password. Defendant advised that under its

---

[2] The letter has not been provided on appeal.

online wire terms and conditions and Online Access Agreement and Deposit Account Agreement, plaintiff was responsible for online wire transfers that originated by using his username and password. Plaintiff did not believe he entered into any agreement stating he was responsible for online transfers that originated using his username and password, and reported the incident to law enforcement.

Plaintiff subsequently received a letter from defendant advising him the claim for reimbursement was denied because "the fraud and claims investigation show[ed] a one-time passcode was sent to the phone number on file and redeemed. Under [defendant's] Online Access Agreement and Deposit Account Agreement, the customer is responsible for online wires that originate using their username and password whether or not actually authorized by them."

On November 6, 2023, plaintiff filed a three-count complaint. Count one alleged plaintiff did not enter into any agreement including the Online Access Agreement or the Deposit Account Agreement, and defendant's actions violated provisions of Article 4A of the Uniform Commercial Code (UCC), N.J.S.A. 12A:4A-101 to -507. Count two alleged that, even if plaintiff had entered into an agreement, defendant's actions violated provisions of the UCC. Count three

4

alleged common-law negligence. Each count sought judgment in the amount of $18,900 plus interest and costs.

In lieu of an answer, defendant moved to compel arbitration and stay the proceedings. The motion included a certification from defendant's employee Kanza Fizazi, who had "personal knowledge of [defendant]'s general business practices with respect to account[]opening and maintenance of deposit and checking accounts." Fizazi's certification annexed three exhibits: the Business Account Application containing plaintiff's electronic signature in three locations, the July 25, 2023 Deposit Account Agreement,[3] and his July 31, 2023 checking account statement.

Plaintiff's opposition to the motion attached a certification wherein he explained how he opened the new accounts at his local bank branch:

> I was taken into the manager's office, asked some questions and advised to sign the manager's electronic iPad where indicated, to open the accounts. The manager also advised me to type where indicated, my new user name and password into the computer. At no time did the manager show me any paper documents or any electronic documents. I was not advised that I was signing any type of document, application or contract on the iPad. No copies of any documents were given to me when the meeting with the manager concluded. The

_____

[3] Defendant filed a supplemental certification annexing the May 9, 2022 Deposit Account Agreement, which was in effect when plaintiff opened the accounts.

manager did not advise me that any documents would be emailed or otherwise sent to me and none were. I was not advised to go to the bank's website to look at any documents or contracts when I signed the iPad. I thought I was just acknowledging that I opened an account, had answered the manager's questions, verified my information and user name and password and was giving a sample of my handwriting.[4] The whole process did not take very long and was done rather informally. I thought this was because I was an existing customer.

Defendant did not respond to the facts alleged in plaintiff's certification.

After considering oral argument and supplemental briefing regarding whether defendant owed plaintiff a fiduciary duty, the trial court granted defendant's motion to compel arbitration and stay the proceedings. In the statement of reasons annexed to the June 20, 2024 order, the court explained:

> In opposing defendant's motion, plaintiff asserts that defendant was obligated to make sure plaintiff had some comprehension of the rights and obligations plaintiff assumed by affixing his signature on the operative contract. Plaintiff is wrong. A party is charged with understanding what they are signing. Generally, "one who does not choose to read a contract before signing it cannot later relieve himself of its burdens." Santana v. SmileDirectClub, LLC, 475 N.J. Super. 279, 286 (App. Div. 2019) [(quoting Skuse v. Pfizer, Inc., 244 N.J. 30, 54 (2020))]. Absent fraud or other misconduct, it is incumbent on a contracting party

---

[4] At oral argument on the motion, plaintiff's counsel explained plaintiff was referring to a sample of his signature, not his handwriting, akin to signing a hard copy signature card.

6

to take reasonable steps to determine what is contained in a document before executing same. It is undisputed that plaintiff made no such efforts.

While plaintiff complains his signature on an iPad should not bind him where the body of the agreement was electronic, the fact is that electronic signatures are commonplace in consumer transactions. E-signatures have the same force and effect as a wet signature. There is no allegation that the operative documents could not be accessed or that plaintiff was dissuaded from inquiring.

Plaintiff knew he was opening a bank account. Common sense and experience teach that bank accounts are governed by contract. Plaintiff was obligated to investigate the terms of the relationship he was entering. He made no effort to understand the ramifications of what he was signing. In fact, he acknowledged receipt, though he appears to claim he never actually received anything.

Moreover, the account agreement itself unambiguously provides that use of the account constitutes acceptance of its terms ("When you sign an account application or use your account, including any account service, you and anyone else identified as an owner or authorized signer on your account consent to the terms of this Agreement"). Simply stated, plaintiff cannot avoid the consequences of his inattention. The above analysis supports referring the matter to arbitration.

Relying on Pagano v. United Jersey Bank, 143 N.J 220, 233 (1996), the

trial court also rejected plaintiff's contention a fiduciary relationship existed

between the parties, finding that the relationship was "simply that of creditor and debtor."

On appeal, plaintiff reprises his arguments before the trial court: he did not agree to arbitration; the unauthorized use of his account was not an arbitrable issue under the arbitration agreement; the Deposit Account Agreement was not properly incorporated into the Business Account Application, the Business Account Application and Deposit Account Agreement were not properly authenticated; and a fiduciary relationship existed between the parties.

II.

"We review a trial court's order granting or denying a motion to compel arbitration de novo because the validity of an arbitration agreement presents a question of law." Ogunyemi v. Garden State Med. Ctr., 478 N.J. Super. 310, 315 (App. Div. 2024) (citing Skuse, 244 N.J. at 46 (holding a trial court's interpretive analysis should not be deferred to unless an appellate court finds its reasoning persuasive)). "We owe no special deference to the trial court's interpretation of an arbitration provision, which we view 'with fresh eyes.'" Ibid. (quoting Morgan v. Sanford Brown Inst., 225 N.J. 289, 303 (2016)).

In reviewing an order compelling arbitration, "we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal

level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). However, that preference is not "without limits." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001).

"When reviewing a motion to compel arbitration, courts apply a two-pronged inquiry: (1) whether there is a valid and enforceable agreement to arbitrate disputes; and (2) whether the dispute falls within the scope of the agreement." Wollen v. Gulf Stream Restoration & Cleaning, LLC, 468 N.J. Super. 483, 497 (App. Div. 2021) (citing Martindale v. Sandvik, Inc., 173 N.J. 76, 83, 92 (2002)).

A court must first apply "state contract-law principles" to determine "whether a valid agreement to arbitrate exists." Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006). "[A] party must agree to submit to arbitration." Hirsch, 215 N.J. at 187 (citing Guidotti v. Legal Helpers Debt Resol., L.L.C., 716 F.3d 764, 771 (3d Cir. 2013) (explaining that "a judicial mandate to arbitrate must be predicated upon the parties' consent")).

Under our state's defined contract-law principles, a valid and enforceable agreement requires: (1) consideration; (2) a meeting of the minds based on a common understanding of the contract terms; and (3) unambiguous assent. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442-45 (2014). Because

consideration is not in dispute, we turn to the issue of whether there was a meeting of the minds.

Assent is a threshold issue when determining the validity of an arbitration clause. Knight v. Vivint Solar Dev., LLC, 465 N.J. Super. 416, 425-26 (App. Div. 2020). Consequently, to be enforceable, the terms of an arbitration agreement must be clear, and any legal rights being waived must be identified. Atalese, 219 N.J. at 443; see also Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 319-20 (2019). "No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Atalese, 219 N.J. at 444. If, "at least in some general and sufficiently broad way," the language of the clause conveys that arbitration is a waiver of the right to bring suit in a judicial forum, the clause will be enforced. Id. at 447; see also Morgan, 225 N.J. at 309 ("No magical language is required to accomplish a waiver of rights in an arbitration agreement."). This court in Midland Funding LLC v. Bordeaux stated

> [T]he party seeking to enforce [an] alleged contractual provision . . . has the burden to prove, by a preponderance of the evidence, that [the non-moving party] assented to it. Moreover, because the arbitration clause constitutes a waiver of [the non-moving party's] constitutional right to adjudicate this dispute in a court of law, [the moving party] must prove that [the non-

moving-party] had full knowledge of [its] legal rights and intended to surrender those rights.

[447 N.J. Super. 330, 336 (App. Div. 2016).]

"An arbitration agreement must be the result of the parties' mutual assent, according to customary principles of state contract law." Skuse, 244 N.J. at 48. "Thus, 'there must be a meeting of the minds for an agreement to exist before enforcement is considered.'" Ibid. (quoting Kernahan, 236 N.J. at 319).

"An arbitration provision is not enforceable unless the consumer has reasonable notice of its existence." Wollen, 468 N.J. Super. at 498. "But a party may not claim lack of notice of the terms of an arbitration provision for failure to read it." Santana, 475 N.J. Super. at 286. "[A]s a general rule, 'one who does not choose to read a contract before signing it cannot later relieve himself [or herself] of its burdens.'" Skuse, 244 N.J. at 54 (quoting Riverside Chiropractic Grp. v. Mercury Ins. Co., 404 N.J. Super. 228, 238 (App. Div. 2008)). "When a party enters into a signed, written contract, that party is presumed to understand and assent to its terms, unless fraudulent conduct is suspected." Stelluti v. Casapenn Enters., LLC, 203 N.J. 286, 305 (2010). Furthermore, "it is clear that, in the absence of fraud, one who does not choose to read a contract before signing it cannot later relieve himself of its burdens." Moreira Constr. Co. v. Moretrench Corp., 97 N.J. Super. 391, 394 (App. Div. 1967).

11

Consistent with his certification in opposition to defendant's motion, plaintiff argues he was not shown and did not sign the Business Account Application or Deposit Account Agreement, and he did not agree to arbitrate his disputes with defendant. He contends he did not have notice he was signing a contract and therefore cannot be bound by the terms of the agreement. Plaintiff further submits his signature on the iPad did not represent a clear expression of an explicit and voluntary agreement to forego the court system in favor of arbitration. He also contends the Business Account Application did not provide adequate inquiry notice on where to find the Deposit Account Agreement and he did not receive notice until after he used the account, which is not reasonable.

Critically, defendant did not dispute the facts contained in plaintiff's certification. Although Fizazi's certification supplied the Business Account Application and Deposit Account Agreement, it did not address whether plaintiff was given these documents or referred to an electronic version of the documents at the time he signed the iPad. Fizazi's certification did not contain defendant's standard practices for opening a new account, nor did defendant provide a certification from the bank employee who assisted plaintiff in opening the new accounts, to rebut plaintiff's factual recitation of that process. And other than providing a copy of plaintiff's account statement, Fizazi's certification did not

12

explain what steps a customer must take to access the Deposit Account Agreement by utilizing the information contained in the account statement. Instead, defendant relied on plaintiff's general duty to read before signing the iPad. See Santana, 475 N.J. Super. at 286.

The facts here are analogous to Knight, wherein the parties disputed whether the plaintiff assented to an arbitration clause when she electronically signed a purchase agreement for the defendant to install solar panels on her home. 465 N.J. Super. at 416. The plaintiff denied the defendant's salesperson displayed the text of the purchase agreement on his iPad, reviewed its terms with her, or even "mention[ed] a contract" when she signed the iPad. Id. at 421. The defendant produced a copy of the purchase agreement electronically signed by the plaintiff, including a checkmark above her signature which, according to the defendant, indicated a customer's consent to arbitration. Ibid. The plaintiff testified there were no check boxes displayed on the iPad when she signed it. Ibid. The salesperson acknowledged only the signature line was displayed, but testified he "thoroughly" reviewed the purchase agreement with the plaintiff. Ibid.

Against this factual backdrop, we determined there were "questions of fact concerning the mutuality of assent to the arbitration provision, which is

necessary to bind both parties to arbitration.  Similar to the plaintiffs in Goffe v. Foulke Mgmt. Corp., 238 N.J. 191 (2019), [the plaintiff] alleges the [purchase agreement] 'as a whole' is invalid."  Id. at 427 (citation reformatted).

We held "unless and until the trial court initially resolve[d] the issues of fact pertaining to the formation of the arbitration provision, and determine[d] the parties agreed to arbitrate their claims" the arbitrator could not decide the validity of the purchase agreement.  Id. at 428.  Therefore, we vacated the trial court's order and remanded for a plenary hearing.  Id. at 419.

Similarly here, plaintiff denies there was mutual assent to the arbitration provision contained in the Deposit Account Agreement, and we are persuaded this factual issue requires reversal of the orders compelling arbitration and to stay the proceedings.  However, we reach a different disposition than Knight because the record here is devoid of any rebuttal to plaintiff's contentions and therefore a plenary hearing is not warranted.  As the moving party, defendant bore the burden to establish the existence of a valid arbitration agreement and, considering plaintiff's unrebutted certification, it failed to meet this burden by preponderance of the evidence.

14

Because we are persuaded the court should not have compelled arbitration on this record, we need not reach the remainder of the arguments raised on appeal.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3319-23