**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0159-24

MICHAEL SAVAGE and
DONNA SAVAGE,

     Plaintiffs-Appellants,

v.

TRINITY SOLAR, INC.,

     Defendant,

and

SUNNOVA ENERGY
CORPORATION,

     Defendant-Respondent.

_____

Submitted February 26, 2025 – Decided April 8, 2025

Before Judges DeAlmeida and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-0101-24.

Rivers Law Firm, LLC, attorneys for appellants (Noël Rivers, on the briefs).

Fishkin Lucks, LLP, attorneys for respondent (Erin C. O'Leary, on the brief).

PER CURIAM

Plaintiffs Michael Savage and Donna Savage appeal from the June 7, 2024 order of the Law Division granting defendant Sunnova Energy Corporation's (Sunnova) motion to compel arbitration and stay the proceedings in this contract dispute, as well as the court's August 2, 2024 order denying plaintiffs' motion for reconsideration. We reverse and remand for further proceedings.

I.

Michael[1] resides at a house in Sussex County owned by his mother, Donna. On February 9, 2023, Michael was at home when Chris Pennella, a representative of defendant Trinity Solar, Inc. (Trinity), come to the front door. Pennella was soliciting the sale and installation of residential solar panels. According to Michael, Pennella made several representations regarding the financial and tax benefits of having solar panels installed on the home, including: (1) that Michael would receive a federal tax rebate of thirty percent of the cost of the solar panels; and (2) installation of the solar panels would eliminate all future electric bills for the house. Michael alleges he relied on

_____

[1] Because plaintiffs share a surname, we refer to them by their first names. We intend no disrespect.

2

Pennella's representations when he agreed to have a solar panel system installed at the home.

While Pennella was present at the house, Michael executed three interrelated agreements, collectively known as the Easy Own Plan, providing for the design, permitting, installation, interconnecting, commissioning, and financing of a solar panel system (the System) for the home. First, a Home Improvement Agreement (HIA) between Michael and Trinity provided Trinity would install the System on the roof of the house. Second, a Loan and Security Agreement (Loan Agreement) between Michael and Sunnova provided, among other things, that: (1) Sunnova would loan Michael the entire up-front cost due to Trinity to pay for the purchase and installation of the System; (2) the System would have limited warranties as provided in the attached Platinum Warranty Agreement (Warranty Agreement); (3) Sunnova would have a security interest in the System; and (4) Michael was obligated to repay the loan from Sunnova over a twenty-five-year term in monthly payments. The agreements contained identical arbitration provisions. Sunnova alleges Michael signed the three agreements, which list Donna as the property owner, both individually and on Donna's behalf.

3

A short time later, Michael participated in a contract validation process in which he appeared on camera and confirmed his identity with a driver's license. During that process he was asked: "[h]ave you reviewed and signed your contract, including the cover highlight sheet[,] and understand all terms and conditions as well as the installation process?" Michael replied, "I agree."

On February 24, 2023, Sunnova issued an amendment to the HIA, Loan Agreement, and Warranty Agreement. Michael signed the amendment the same day. Sunnova alleges Donna signed the amendment on March 1, 2023, which it characterizes as her ratification of the three agreements, including their arbitration provisions. Trinity subsequently installed the System at the home.

On February 26, 2024, Michael and Donna filed a complaint in the Law Division against Trinity and Sunnova. They alleged that after installation of the System, they learned they would not be receiving a federal tax rebate and continued to receive electric bills for the home, which were higher than the electric bills they received prior to installation of the System. Plaintiffs alleged: (1) violation of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -210, and related regulations; (2) common law fraud; (3) violation of the Truth-in-Lending Act, 15 U.S.C.A. § 1601 to § 1667(f); (4) breach of the covenant of good faith and

4

fair dealing; (5) breach of the implied warranty of merchantability; (6) breach of contract; and (7) negligence.

On May 3, 2024, Sunnova moved to stay the matter and compel arbitration of plaintiffs' claims. Sunnova relied on the arbitration provisions in the agreements.

Plaintiffs opposed the motion. In a certification submitted in opposition to Sunnova's motion, Michael stated that on February 9, 2023, Pennella told him that the agreements for the System would be emailed to him for review. According to Michael, when the emails appeared on Michael's cellphone, Pennella took the phone and scrolled through the agreements before turning the phone around so Michael could see the screen. Pennella then pointed to a place on the screen and told Michael to tap that location to affix his initials or signature to the documents. Michael certified that after he clicked on the screen as directed by Pennella, Pennella immediately turned the phone away, preventing Michael from seeing the screen.

According to Michael, the terms of the agreements were not visible on the screens Pennella permitted him to see. Michael certified that the only thing visible on the screen when he clicked to add his initials and signature was a

5

signature or initial block and no text of the agreements. This process was repeated until Michael approved each of the agreements.

Michael alleged Pennella rushed him through the transaction, and did not permit him to scroll through the agreements or to review the terms of the contracts. Michael also alleged Pennella made derogatory comments when Michael expressed a desire to have his fiancé review the agreements before affixing his signature, which added pressure to complete the transaction. Michael certified Pennella never told him about the arbitration provisions or showed him any documents, electronic or otherwise, that contained an arbitration provision.

The February 9, 2023 agreements show nineteen instances of Michael's signatures or initials, eight of which are dated and time stamped with the same date and time. The remaining eleven are not dated or time stamped. Michael, who has no legal training, certified he would not have been able to read fifty-three pages of contract provisions and sign or initial the agreements nineteen times in the sixty-second period reflected in the time stamps.

Michael also certified he informed Pennella that Donna, and not Michael, owned the house. According to Michael, Pennella said he would add Donna's name to the agreements as a formality. Michael certified that Pennella instructed

6

Michael to tap the screen on his phone next to Donna's name to affix initials and signatures on the agreements on her behalf. Donna was not present and did not initial or sign the agreements on February 9, 2023.

Michael certified he did not recall arbitration being mentioned during the contract validation process. A transcript of the process submitted by Sunnova does not reflect discussion of the arbitration provisions in the agreements.

Plaintiffs also relied on a certification executed by Donna. In the certification, Donna stated she was not present at the house on February 9, 2023, did not receive, review, or sign the agreements, or authorize Michael to do so on her behalf. She also certified she did not sign the March 1, 2023 amendment to the agreements. Donna noted that the copy of the March 1, 2023 amendment submitted in support of Sunnova's motion does not contain an arbitration provision.

Sunnova did not submit a certification from Pennella setting forth his version of what transpired on February 9, 2023, how Michael's initials and signatures were obtained, and the authority on which Sunnova contended Michael was authorized to sign the agreements on behalf of Donna. Nor did Sunnova submit evidence explaining how Donna's purported assent to the March 1, 2023 amendment was obtained.

A-0159-24

On June 7, 2024, the trial court granted Sunnova's motion. The entirety of the court's findings of fact and conclusions of law was: "[a]rbitration provision is clear and unambiguous." A June 7, 2024 order memorialized the trial court's decision.

On June 20, 2024, plaintiffs moved for reconsideration of the June 7, 2024 order. Plaintiffs argued the trial court failed to issue findings of fact or conclusions of law addressing their argument that they did not assent to a waiver of their rights to a jury trial and consent to arbitration. Plaintiffs asserted a plenary hearing was necessary to resolve genuinely disputed issues of material fact with respect to their consent to the arbitration provisions in the agreements. Sunnova opposed the motion.

On August 2, 2024, the trial court denied plaintiffs' motion for reconsideration. In a written decision, the trial court concluded:

> This court finds plaintiffs have failed to present an argument which shows reconsideration is necessary in the interests of justice. While this court understands plaintiffs do not agree with the court's decision, disagreement is not a basis for a reconsideration motion. Plaintiffs made the arguments regarding mutual assent in their opposition to the original motion and the court considered plaintiffs['] arguments. Plaintiffs' motion for reconsideration is simply a reiteration of the arguments contained in their original opposition concerning mutual assent. Plaintiffs signed a clear and unambiguous arbitration agreement.

A-0159-24

An August 2, 2024 order memorialized the trial court's decision.

This appeal followed. Plaintiffs argue: (1) the record does not support the trial court's finding plaintiffs assented to arbitration; (2) the trial court failed to make adequate findings of fact and conclusions of law; (3) genuinely disputed issues of material fact with respect to the parties' mutual assent to the arbitration provisions remain unresolved; (4) if the record supports the trial court's finding of mutual assent, the trial court erred by not concluding the arbitration provisions are unconscionable; and (5) if the matter is remanded, a different judge should be assigned to decide Sunnova's motion because the judge who issued the orders on appeal has demonstrated a commitment to his prior findings.

## II.

"We review a trial court's order granting or denying a motion to compel arbitration de novo because the validity of an arbitration agreement presents a question of law." Ogunyemi v. Garden State Med. Ctr., 478 N.J. Super. 310, 315 (App. Div. 2024) (citing Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020) (holding a trial court's interpretive analysis should not be deferred to unless an appellate court finds its reasoning persuasive)). "We owe no special deference to the trial court's interpretation of an arbitration provision, which we view 'with

fresh eyes.'" Ibid. (quoting Morgan v. Sanford Brown Inst., 225 N.J. 289, 303 (2016)).

In reviewing an order compelling arbitration, "we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). However, that preference is not "without limits." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001).

"When reviewing a motion to compel arbitration, courts apply a two-pronged inquiry: (1) whether there is a valid and enforceable agreement to arbitrate disputes; and (2) whether the dispute falls within the scope of the agreement." Wollen v. Gulf Stream Restoration & Cleaning, LLC, 468 N.J. Super. 483, 497 (App. Div. 2021) (citing Martindale v. Sandvik, Inc., 173 N.J. 76, 83 (2002)).

A court must first apply "state contract-law principles" to determine "whether a valid agreement to arbitrate exists." Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006). "[A] party must agree to submit to arbitration." Hirsch, 215 N.J. at 187 (citing Guidotti v. Legal Helpers Debt Resol., L.L.C., 716 F.3d 764, 771 (3d Cir. 2013) (explaining that "a judicial mandate to arbitrate must be predicated upon the parties' consent")).

A-0159-24

Under our state's defined contract-law principles, a valid and enforceable agreement requires: (1) consideration; (2) a meeting of the minds based on a common understanding of the contract terms; and (3) unambiguous assent. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442-45 (2014). Because consideration is not in dispute, we turn to the issue of whether there was a meeting of the minds.

Assent is a threshold issue when determining the validity of an arbitration clause. Knight v. Vivint Solar Dev., LLC, 465 N.J. Super. 416, 425-26 (App. Div. 2020). Consequently, to be enforceable, the terms of an arbitration agreement must be clear, and any legal rights being waived must be identified. Atalese, 219 N.J. at 443; see also Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 319-20 (2019). "No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Atalese, 219 N.J. at 444. If, "at least in some general and sufficiently broad way," the language of the clause conveys that arbitration is a waiver of the right to bring suit in a judicial forum, the clause will be enforced. Id. at 447; see also Morgan, 225 N.J. at 309 ("No magical language is required to accomplish a waiver of rights in an arbitration agreement."). As we stated Midland Funding LLC v. Bordeaux:

> [T]he party seeking to enforce [an] alleged contractual
> provision . . . has the burden to prove, by a

preponderance of the evidence, that [the non-moving party] assented to it. Moreover, because the arbitration clause constitutes a waiver of [the non-moving party's] constitutional right to adjudicate this dispute in a court of law, [the moving party] must prove that [the non-moving-party] had full knowledge of [its] legal rights and intended to surrender those rights.

[447 N.J. Super. 330, 336 (App. Div. 2016).]

"An arbitration agreement must be the result of the parties' mutual assent, according to customary principles of state contract law." Skuse, 244 N.J. at 48. "Thus, 'there must be a meeting of the minds for an agreement to exist before enforcement is considered.'" Ibid. (quoting Kernahan, 236 N.J. at 319).

"An arbitration provision is not enforceable unless the consumer has reasonable notice of its existence." Wollen, 468 N.J. Super. at 498. "But a party may not claim lack of notice of the terms of an arbitration provision for failure to read it." Santana v. SmileDirectClub, LLC, 475 N.J. Super. 279, 286 (App. Div. 2023). "[A]s a general rule, 'one who does not choose to read a contract before signing it cannot later relieve himself [or herself] of its burdens.'" Skuse, 244 N.J. at 54 (quoting Riverside Chiropractic Grp. v. Mercury Ins. Co., 404 N.J. Super. 228, 238 (App. Div. 2008)). "When a party enters into a signed, written contract, that party is presumed to understand and assent to its terms, unless fraudulent conduct is suspected." Stelluti v. Casapenn Enters., LLC, 203

N.J. 286, 305 (2010). Furthermore, "it is clear that, in the absence of fraud, one who does not choose to read a contract before signing it cannot later relieve himself of its burdens." Moreira Constr. Co., Inc. v. Moretrench Corp., 97 N.J. Super. 391, 394 (App. Div. 1967).

The facts here are analogous to Knight, where the parties disputed whether the plaintiff assented to an arbitration clause when she electronically signed a purchase agreement for the defendant to install solar panels on her home. 465 N.J. Super. at 419. The plaintiff denied the defendant's salesperson displayed the text of the purchase agreement on his iPad, reviewed its terms with her, or even "mention[ed] a contract" when she signed the iPad. Id. at 421. The defendant produced a copy of the purchase agreement electronically signed by the plaintiff, including a checkmark above her signature which, according to the defendant, indicated a customer's consent to arbitration. Ibid. The plaintiff testified there were no check boxes displayed on the iPad when she signed it. Ibid. The salesperson acknowledged only the signature line was displayed, but testified he "thoroughly" reviewed the purchase agreement with the plaintiff. Ibid. Against this factual backdrop, we determined there were "questions of fact concerning the mutuality of assent to the arbitration provision, which is necessary to bind both parties to arbitration." Id. at 427.

We held "unless and until the trial court initially resolve[d] the issues of fact pertaining to the formation of the arbitration provision, and determine[d] the parties agreed to arbitrate their claims" the arbitrator could not decide the validity of the purchase agreement. Id. at 428. Therefore, we vacated the trial court's order and remanded for a plenary hearing. Id. at 419.

Similarly here, although Michael does not deny he signed the agreements, he denies there was mutual assent to the arbitration provisions in the agreements because of the way Pennella obtained his initials and signatures. Specifically, Michael denies he was given an opportunity to review the agreements and asserts that the screens which Pennella permitted him to review did not contain the terms of the agreements generally or the arbitration provisions specifically. In addition, Michael certifies the arbitration provisions were not discussed during the contract validation process, and that subsequent email communications with Sunnova, including with respect to the amendment and Donna's purported ratification of the agreements, had attached to them various versions of the agreements with conflicting indications of his and Donna's written assent.

Donna certifies she was unaware of the agreements until around the time of the filing of the complaint, and denies having signed or initialed the agreements either on February 9, 2023 or March 1, 2023. She also contests

14

Michael's purported authority to assent to the agreements on her behalf on February 9, 2023, during the contract validation process, on February 24, 2023, or at any other time.

In response to plaintiffs' arguments, Sunnova proffered what it contends are copies of the agreements and the amendment signed and initialed by Michael and Donna. It failed, however, to submit: (1) a certification from Pennella explaining how Michael's initials and signatures, on behalf of himself and purportedly on behalf of Donna, were obtained; and (2) evidence clarifying which documents were emailed to Michael and Donna after February 9, 2023, and detailing Donna's purported ratification of the agreements through approval of the amendment on March 1, 2023.

Because these disputed issues of fact are germane to the determination of whether plaintiffs assented to the agreements, their amendment, and the arbitration provisions, it was error for the trial court to grant Sunnova's motion to stay this matter and compel arbitration and to deny plaintiffs' motion for reconsideration.

We, therefore, reverse the June 7, 2024 and August 2, 2024 orders, and remand for a plenary hearing on Sunnova's motion for a stay and to compel arbitration. We offer no opinion with respect to the outcome of the motion,

15

including with respect to plaintiffs' argument that the arbitration provisions are unconscionable or Sunnova's argument plaintiffs are estopped from opposing arbitration, neither of which appear to have been addressed by the trial court in the first instance.

We see no basis on which to direct the hearing on remand take place before a different judge. The judge who decided Sunnova's motion and plaintiffs' motion for reconsideration did not display a commitment to his findings warranting reassignment. See Graziano v. Grant, 326 N.J. Super. 328, 350 (App. Div. 1999).

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division